844 So.2d 1012 (2003)
Danatus Norman KING
v.
PHELPS DUNBAR, L.L.P., et al.
No. 2001-CA-1735.
Court of Appeal of Louisiana, Fourth Circuit.
April 2, 2003.
*1014 Danatus N. King, New Orleans, LA, for Plaintiff/Appellant.
Robert E. Kerrigan, Jr., Ellis B. Murov, Charles F. Seemann, III, Deutsch, Kerrigan & Stiles, L.L.P., New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge CHARLES R. JONES, Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS JR.).
MICHAEL E. KIRBY, Judge.
Plaintiff, Danatus King, appeals the trial court's judgment granting summary judgment in favor of defendant, Phelps Dunbar L.L.P., and dismissing plaintiff's action.
In 1996, plaintiff sued the Phelps Dunbar law firm and several of its partners, alleging constructive discharge because of racial discrimination and intentional infliction of emotional distress. Plaintiff claims that he was assigned to cases because of his race, and after rejecting those assignments, *1015 his work was unfairly criticized and assignments were withheld in order to force him to resign from the firm.
The trial court granted summary judgment dismissing the plaintiff's claims against the individual defendants, and also granted the exception of prescription filed by all of the defendants, dismissing plaintiff's claims against both the individual defendants and the law firm. This Court affirmed that trial court judgment in King v. Dunbar, 97-2519 (La.App. 4 Cir. 6/3/98), 716 So.2d 104. In King v. Phelps Dunbar, L.L.P., 98-1805 (La.6/4/99), 743 So.2d 181, the Louisiana Supreme Court affirmed the summary judgment dismissal of plaintiff's claims against the individual defendants. However, the Supreme Court vacated this Court's affirmation of the granting of the exception of prescription against all defendants, and remanded the case to the trial court for trial on the merits. Due to the Supreme Court's decision, the only remaining defendant is the Phelps Dunbar law firm (hereinafter referred to as "Phelps").
On February 20, 2001, Phelps filed a motion for summary judgment against plaintiff. In support of this motion, Phelps filed an original memorandum and attached to it a statement of material facts and the following exhibits: 1) an affidavit from Roy Cheatwood, a partner in its Commercial Litigation Section; 2) an affidavit from Jenny Chunn, its former Director of Legal Personnel and Client Services; 3) an affidavit from William Howard, a partner who represented the New Orleans Aviation Board; 4) the plaintiff's petition; 5) excerpts from plaintiff's depositions; 6) an affidavit from Reuben Anderson, a black partner in charge of minority hiring at the firm when plaintiff was hired; 7) articles from the New Orleans Times Picayune reporting results of elections in which plaintiff ran for positions on the New Orleans School Board and City Council; 8) an affidavit from Harry Rosenberg, a partner at the firm; 9) an affidavit from Paul Peyronnin, a partner at the firm; 10) invoices from plaintiff to clients for legal services rendered after he left Phelps; 11) copies of plaintiff's federal income tax returns for the years 1995 through 1999; and 12) bank statements for plaintiff's law office accounts.
Phelps later filed a supplemental memorandum in support of its motion for summary judgment, and attached to it copies of various discovery-related correspondence involving plaintiff's suit against Phelps. A second supplemental memorandum included a supplemental statement of material facts and the affidavit of M. Nan Alessandra, a partner at Phelps who served as the hiring partner inconnection with the recruitment of attorneys in the early 1990's. Also attached to this memorandum was literature from the American Bar Association's Commission on Racial and Ethnic Diversity in the Profession. Phelps subsequently filed a third supplemental memorandum. Attached to that memorandum were the following: 1) a writ disposition from this Court in this matter; 2) notes taken by plaintiff documenting alleged discrimination toward him by Phelps; and 3) pleadings filed by plaintiff on behalf of the New Orleans Aviation Board after plaintiff left Phelps.
In opposition to Phelps' motion for summary judgment, plaintiff filed a memorandum and the following exhibits: 1) excerpts from the deposition of Penelope Cabibi, a former secretary of Phelps partner Roy Cheatwood; 2) correspondence between King and counsel for Phelps; 3) an affidavit from plaintiff; and 4) excerpts from plaintiff's deposition. Plaintiff subsequently filed a supplemental memorandum, and attached to that memorandum *1016 excerpts from plaintiff's deposition and from the depositions of the following Phelps partners: Roy C. Cheatwood, Nancy Scott Degan, David J. Krebs, Harry Smith Redmon, Jr., Harry Rosenberg, Danny G. Shaw, Paul L. Peyronnin, Brent B. Barriere and William Howard.
Plaintiff filed a second supplemental memorandum in opposition to the motion for summary judgment. Attached to this motion were plaintiff's previously submitted affidavit and more excerpts from the depositions of David J. Krebs, Danny G. Shaw, plaintiff, Nancy Scott Degan, Harry Smith Redmon, Jr., Roy C. Cheatwood, Paul L. Peyronnin, Brent B. Barriere, William Howard and Penelope Cabibi. Many of the excerpts attached to the second supplemental memorandum were duplicative of those attached to earlier memoranda. Additionally, plaintiff attached a letter to him from Roy Cheatwood regarding plaintiff's temporary working arrangement with Phelps following his resignation.
On March 26, 2001, the trial court denied defendant's motion for summary judgment based on plaintiff's representation that he had not had an adequate opportunity to conduct discovery. The trial court allowed plaintiff one month to conduct discovery for the purpose of opposing defendant's motion, and further allowed defendant to re-urge its motion at that time. One day later, plaintiff filed a motion to compel discovery responses asking the trial court to order defendant to provide responses to plaintiff's interrogatories and request for production of documents dated July 1, 1996. The trial court denied the motion to compel, with the exception of ordering defendant to produce plaintiff's time sheets and reading file if they existed.
On April 24, 2001, defendant filed a motion to reset its motion for summary judgment that was originally filed on February 20, 2001. A hearing was held on June 15, 2001, and the trial court granted defendant's motion for summary judgment on July 5, 2001. Plaintiff now appeals from that judgment.
On appeal, plaintiff raises three assignments of error:
1) The trial court erred in disregarding the Louisiana Supreme Court's mandate that plaintiff's claims be tried on the merits;
2) The trial court erred in finding genuine issues of material fact did not exist to preclude summary judgment; and
3) The trial court erred in not allowing plaintiff to conduct sufficient discovery prior to hearing defendant's motion for summary judgment.
We will consider plaintiff's third assignment of error first regarding the trial court's ruling on his motion to compel discovery responses. The trial court's ruling on that matter was rendered in a judgment dated April 11, 2001. On May 22, 2001, this Court stated in its writ disposition in 2001-C-0945 that plaintiff had an adequate remedy on appeal to challenge the trial court's ruling on his motion to compel.
Plaintiff propounded interrogatories and requests for production of documents to Phelps. He argues that certain of Phelps' responses were incomplete or evasive, and that he did not have an adequate opportunity to conduct discovery prior to the hearing on Phelps' motion for summary judgment.
The request for interrogatories for which plaintiff claims he received incomplete or evasive responses can be summarized as follows: (1) lists of attorneys and law clerks employed by Phelps during specific time periods; their addresses and phone numbers; age, race and sex; education; *1017 honors; dates of employment; and status with the firm; (2) a list of associates hired during certain years, and their salaries and other employment information; (3) names, addresses, job titles, age, race and sex of minority attorneys hired by Phelps; (4) any racial discrimination claims filed against Phelps or its partners; (5) compliments and criticism about plaintiff's job performance from clients, attorneys, judges and mediators; and (6) a list of meetings between plaintiff and several partners regarding assignment of case files.
The requests for production of documents for which plaintiff claims he received incomplete or evasive responses include documentation related to the requests for interrogatories summarized in the preceding paragraph. Other items requested can be summarized as follows: (1) personnel records; (2) evaluations; (3) minutes of Phelps' meetings; (4) time sheets of other associates; (5) correspondence from clients requesting that specific associates be assigned to their case files; (6) list of files worked on by plaintiff; (7) documents regarding messages from plaintiff to certain partners requesting additional work assignments; (8) documents reflecting incomplete or inadequate job performance by plaintiff and (9) Phelps' charters, articles of incorporation, partnership agreements, by-laws and shareholder agreements.
Phelps provided some of the information requested by plaintiff, but objected to the interrogatories at issue as overly broad, oppressive, vague, unduly burdensome, and as seeking information protected from disclosure by the attorney-client privilege. Phelps objected to some of the information requested as being neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in the subject matter of this dispute.
With regard to the requests for production of documents, Phelps argues that it produced documents responsive to some of plaintiff's requests, but it objected to producing other documents requested because it would impose upon Phelps an unreasonable and unduly burdensome investigation to obtain information or a document that is, or ought to be, in the possession or control of plaintiff. Other documents sought were not in the possession, custody or control of Phelps. Phelps also objected to production of many of the documents requested as overly broad, oppressive, vague, unduly burdensome, onerous or unreasonably expensive to answer.
Following the motion to compel discovery responses filed by plaintiff on March 27, 2001, the trial court ordered Phelps to produce plaintiff's time sheets and his reading file, assuming that those documents still existed. The court otherwise denied plaintiff's motion to compel, and plaintiff now argues on appeal that the court abused its discretion in doing so.
A trial court has broad discretion in ruling on pre-trial discovery, and an appellate court should not upset such a ruling absent an abuse of that discretion. Moak v. Illinois Central Railroad Co., 93-0783 (La.1/14/94), 631 So.2d 401. This broad discretion includes the right to refuse or limit discovery of matters that are not relevant to the issues. Johnson v. Louisiana Department of Labor, Office of Workers' Compensation, 98-0690 (La.App. 1 Cir. 5/14/99), 737 So.2d 898. After a review of the plaintiff's discovery requests and the responses provided by Phelps, we conclude that plaintiff has not shown that the trial court abused its discretion in its April 11, 2001 ruling on his motion to compel discovery responses.
Furthermore, we note the fact that 4½ years elapsed between the filing of plaintiff's *1018 lawsuit and the filing of his motion to compel. In November 1996, Phelps provided plaintiff with a Martindale Hubbell listing of attorneys with the firm from 1990 to 1995 in response to plaintiff's first set of interrogatories. The business addresses and telephone numbers of these attorneys were publicly available, and plaintiff had ample opportunity to attempt to contact them during this 4½ year period.
This assignment of error is without merit.
Plaintiff next argues that the Louisiana Supreme Court's decision in King v. Phelps Dunbar, L.L.P., 98-1805 (La.6/4/99), 743 So.2d 181, precluded Phelps from subsequently filing its motion for summary judgment. The Supreme Court vacated this Court's affirmation of the granting of an exception of prescription filed by Phelps and the individual defendants and remanded the case to the trial court for a trial on the merits.[1] As stated above, because the Court also affirmed the summary judgment dismissal of the individual defendants, Phelps is the only remaining defendant for purposes of the instant appeal. The only issues before the Supreme Court regarding Phelps were prescription issues. While the Court stated that the prescription issues for both the employment discrimination and intentional infliction of emotional distress claims could not be resolved without trial on the merits, we do not interpret the Court's decision as precluding other issues, such as Phelps' motion for summary judgment, from being addressed prior to trial. We find no merit in plaintiff's argument.
Plaintiff's remaining assignment of error is that the trial court erred in granting Phelps' motion for summary judgment. He contends that genuine issues of material fact remain as to whether Phelps subjected him to racial employment discrimination by allegedly assigning files to him because of his race, retaliating against him for refusing to be assigned cases because of his race, treating him disparately because of his race, subjecting him to a racially hostile work environment, and constructively discharging him by making his work environment so hostile that he was forced to resign. He also contends that genuine issues of material fact remain as to whether Phelps intentionally inflicted emotional distress upon him.
Summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. Article 966 was amended in 1996, but the burden of proof remains with the mover to show that no genuine issue of material fact exists. If the mover will not bear the burden of proof at trial, his burden on the motion does not require him to negate all essential elements of the plaintiff's claim, but rather to point out that there is an absence of factual support for one or more elements essential to the claim. La. C.C.P. art. 966 C(2); Fairbanks v. Tulane University, 98-1228 (La. App. 4 Cir. 3/31/99), 731 So.2d 983. After the mover has met its initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. La. C.C.P. art. 966 C(2); Smith v. General Motors Corp., 31,258 (La.App. 2 Cir. 12/9/98), 722 So.2d 348. If the non-moving party fails to meet this burden, there is no genuine issue of material fact and the mover is entitled to summary judgment as a matter of law. La. C.C.P. art. 966; Schwarz v. *1019 Administrators of Tulane Educational Fund, 97-0222 (La.App. 4 Cir. 9/10/97), 699 So.2d 895. Appellate courts review summary judgments de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate.
During the time period at issue, former La. R.S. 23:1006 B[2] stated as follows, in pertinent part:
B. It shall be unlawful discrimination in employment for an employer to:
(1) Intentionally fail or refuse to hire, refer, discharge, or to otherwise intentionally discriminate against or in favor of an individual with respect to compensation, terms, conditions, or privileges of employment, because of race, color, religion, sex, or national origin; or
(2) Intentionally limit, segregate, or classify an employee in a way which would deprive an individual of employment opportunities, give a favor or advantage to one individual over another, or otherwise adversely or favorably affect the status of an employee because of race, color, religion, sex, or national origin. Provided, however, that nothing contained herein shall be construed so as to create a cause of action against any employer for employment parctices pursuant to any affirmative action plan.
In order to prove constructive discharge, the plaintiff must prove that the employer intended to and deliberately created such intolerable working conditions that the employee was forced into involuntary resignation. Plummer v. Marriott Corp., 94-2025, p. 9 (La.App. 4 Cir. 4/26/95), 654 So.2d 843, 849. To find that a constructive discharge has occurred, the trier of fact must be satisfied that the working conditions to which the employee was subjected were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. Id.
In order to recover for intentional infliction of emotional distress, a plaintiff must establish: (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. White v. Monsanto Co., 585 So.2d 1205, 1209 (La.1991).
In support of its motion for summary judgment, Phelps established through affidavits, depositions and other documentation the following: In 1990, shortly after being hired as an associate at Phelps, plaintiff was asked if he wanted to work on the files of one of Phelps' major clients, the insurer of the New Orleans Aviation Board. The partners involved in this matter told plaintiff that this opportunity was based upon a specific request from this client to have minority attorneys assigned to their files. The plaintiff conveyed to the partners that he was uncomfortable being asked to work on cases because of his race, and declined the offer to work on the Aviation Board files.[3] Once the plaintiff made his feelings known on this subject, the law firm did not order plaintiff to work on those files.
*1020 Plaintiff's first evaluation while at Phelps occurred in 1991, the year after he declined to work on Aviation Board files, and that evaluation was the best one he received during his employment at the law firm. His 1992 evaluation was almost as favorable as his 1991 evaluation. His 1993 and 1994 evaluations were less favorable, and the affidavits and depositions offered in support of the motion for summary judgment established that most of the partners who offered those evaluations of plaintiff felt that he was not progressing at the level expected of an associate with his number of years of experience. Bill Aaron, a black partner, stated in his 1994 evaluation of plaintiff that he was performing below his capabilities.
According to the supporting documentation attached to Phelps' motion, plaintiff was not subject to disparate treatment by the firm after he refused to work on the Aviation Board files. After rejecting the offer to work on those files in 1990, plaintiff was twice allowed by Phelps to seek public office while remaining employed by the firm. Plaintiff ran for a position on the New Orleans City Council in 1992 and for a position on the Orleans Parish School Board in 1993. Phelps and its partners contributed time and money to both of plaintiff's campaigns. Plaintiff's billing records show that he worked fewer billable hours in the years that he sought public office, and in 1994 when he took a month off for medical reasons. Plaintiff received his full salary during the times he ran for public office and had health problems, even though he worked fewer billable hours than normally expected of associates. Plaintiff received pay raises each year he worked at Phelps, and also received bonuses in 1991 and 1992. When plaintiff resigned from Phelps in 1995, he and the law firm entered into a temporary arrangement in which the firm agreed to pay plaintiff to serve as a consultant on a case on which he had worked during his employment at Phelps.
Through its supporting documentation, Phelps met its initial burden of proving that that there is an absence of factual support for one or more elements essential to plaintiff's claims. The burden then shifted to plaintiff to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial.
In opposing the motion, plaintiff offers documentation that he alleges shows that genuine issues of fact remain as to whether he was assigned to certain cases because of race. He also claims that issues of fact remain as to whether after refusing to be assigned to cases because of his race, certain Phelps partners retaliated against him by unfairly criticizing his work and withholding work assignments so that he was unable to work the amount of billable hours expected of him. He claims he was "frozen out" by firm members whose intention was to make his work environment so intolerable that he would resign.
Plaintiff cites deposition testimony from several Phelps partners to support his claim that the law firm "assigned" plaintiff jobs based on his race. Plaintiff cites the case of Ferrill v. Parker Group, Inc., 168 F.3d 468 (11th Cir.1999), in which a telephone marketing company that worked for various political candidates was held liable to plaintiff in that case for its practice of assigning black employees to call black voters and assigning white employees to call white voters. The telephone marketing company also segregated callers by placing the black callers in one room and the white callers in another room.
Plaintiff cites two examples of being assigned to a job because of race: the offer to work on files involving the Aviation Board, and a case involving Le Meridien *1021 Hotel in New Orleans. The deposition testimony of the Phelps partners cited by plaintiff establishes that the offer to work on the Aviation Board files was not a "job assignment," such as that contemplated in the Ferrill case, because plaintiff was given the choice to accept or reject the offer to work on those files.
In the case involving Le Meridien Hotel (hereinafter referred to as "Meridien"), it is undisputed that the plaintiff refused to return to the trial in this case after opposing counsel allegedly made a comment about him that was racially insensitive. Plaintiff cites the deposition testimony of Penelope Cabibi, a former secretary at Phelps, who alleges that Paul Peyronnin told her in a private conversation that the law firm assigned plaintiff to the case because he is black, and that Mr. Peyronnin used a racial slur in this conversation. Mr. Peyronnin denies Ms. Cabibi's allegations, but more importantly for summary judgment purposes, Mr. Peyronnin was still an associate at Phelps at the time of this alleged conversation. Therefore, even assuming arguendo that Mr. Peyronnin made these comments to Ms. Cabibi, he was not in a position at that time to assign jobs to plaintiff and he could not have had personal knowledge of the motivations, if any, of those who assigned cases.
Plaintiff claims that Roy Cheatwood's deposition reveals that he was personally offended by plaintiff's position that he did not want to be assigned to files because of his race. The excerpts of Mr. Cheatwood's deposition offered by plaintiff reveal no such thing. Mr. Cheatwood said he was offended when plaintiff refused to go back to the Meridien trial after opposing counsel made a racially insensitive remark. Mr. Cheatwood's testimony shows that his offense toward plaintiff was limited to the fact that he had left a case in the middle of a trial, and allegedly refused to work in Civil District Court. Mr. Cheatwood said the plaintiff's refusal to work in Civil District Court troubled him because many of the cases handled by Phelps were in that court. Nowhere in the portions of Mr. Cheatwood's deposition offered by plaintiff does he say that he was offended by plaintiff's refusal to be assigned to cases because of his race.
Similarly, Paul Peyronnin, an associate at the time of the Meridien trial, stated that he was irritated with plaintiff's behavior during the trial, but his irritation was limited to the fact that plaintiff refused to return to the Meridien trial after opposing counsel made a racially insensitive remark about plaintiff in his presence. Mr. Peyronnin said that plaintiff's decision to refuse to return to the trial made him mad at the time because it meant that Mr. Peyronnin had to take on plaintiff's share of the work in addition to his own until the partners in the case assigned another associate to assist.
Plaintiff also cites the excerpt from Brent Barriere's deposition describing Roy Cheatwood as being "very exercised" at plaintiff during the Meridien trial. Plaintiff suggests in his second supplemental memorandum in opposition to the motion for summary judgment that Mr. Barriere's testimony confirms his earlier claim that Mr. Cheatwood became upset with plaintiff when he refused to continue to participate in the Meridien trial "because he felt he was being used because of his race." Mr. Barriere's testimony was that Mr. Cheatwood was upset with plaintiff because Mr. Cheatwood was depending on plaintiff's assistance in the trial and when he was ready to return to court, plaintiff was nowhere to be found. There is nothing in the excerpts of Mr. Barriere's testimony supporting plaintiff's contention that Mr. Cheatwood was offended by plaintiff's refusal *1022 to take assignments that were based on his race.
Plaintiff also offered excerpts of his own deposition and contemporaneous notes he took documenting raced-based job assignments. These items do not include factual support based on personal knowledge that plaintiff was "assigned" to cases because of race. Phelps offered documentation showing that plaintiff was free to accept or reject the offer to work on the Aviation Board cases, and Phelps has denied that plaintiff was chosen to participate in the Meridien case because of race. Plaintiff has not offered factual support based on personal knowledge showing that Phelps "assigned" plaintiff to cases based on his race. Plaintiff's deposition contains only conclusory allegations and speculation on this issue. Unfounded assertions, conclusory allegations and subjective opinions cannot satisfy plaintiff's burden under La. C.C.P. art. 966 to produce factual support sufficient to satisfy his evidentiary burden at trial. Duet v. Martin Marietta Corporation, 98-1329 (La.App. 4 Cir. 11/10/98), 720 So.2d 1290.
We next examine plaintiff's supporting documentation to determine whether genuine issues of fact remain as to whether or not Phelps retaliated against plaintiff by adopting a strategy of denying him assignments in an attempt to force him to accept race-based assignments or to resign. In the deposition testimony excerpts offered by plaintiff, the Phelps partners refuted plaintiff's claims of retaliation, including the denial of work assignments, and plaintiff did not produce any factual support sufficient to satisfy his evidentiary burden at trial on this issue. Plaintiff's statements regarding the alleged retaliatory intentions of others in his deposition, contemporaneous notes and affidavit are mere conclusory allegations and are not based upon personal knowledge. Affidavits and deposition testimony submitted in connection with a motion for summary judgment must be based on personal knowledge. Butler v. Reeder, 615 So.2d 1120, 1123 (La.App. 5 Cir.1993). This Court held recently that even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation. Haney v. Delta Petroleum Co., Inc., XXXX-XXXX, p. 5 (La. App. 4 Cir. 3/6/02), 811 So.2d 1200, 1204, writ denied, XXXX-XXXX (La.9/13/02), 824 So.2d 1169, citing Carter v. BRMAP, 591 So.2d 1184 (La.App. 1 Cir.1991).
Plaintiff claims that the alleged retaliation efforts of Phelps also took the form of unwarranted criticism of plaintiff's work after he refused race-based assignments. A review of plaintiff's evaluations while employed at Phelps shows that plaintiff received favorable evaluations in 1991 and 1992. His evaluations for 1993 and 1994 were less favorable, with several partners commenting that plaintiff showed a lack of initiative and independence in his work. The 1994 evaluation included many more comments indicating that plaintiff's research and writing skills needed improvement, and that plaintiff required a greater amount of supervision than that usually necessary for an associate with his number of years of experience. On January 20, 1995, plaintiff had a meeting with several partners in which he was informed that his latest evaluation reflected that his performance was not acceptable for a fourth or fifth year associate, and that the partners lacked confidence in him.
It is undisputed that the partners' evaluations of plaintiff started off positively in his first two years at Phelps and then grew increasingly critical of his performance from 1993 until he resigned in 1995. Although *1023 plaintiff points to portions of the partners' deposition testimony that refer to positive aspects of his performance as an associate, he does not offer any fact, based on personal knowledge, supporting his position that the criticism of other aspects of his performance was unwarranted. The deposition testimony of the partners cites many examples of occasions when plaintiff's performance was unsatisfactory. Again, plaintiff offered only conclusory allegations in support of his charge that he was subject to unwarranted criticism after refusing to accept assignments based on race.
Plaintiff also argues that genuine issues of fact exist as to whether he was subjected to disparate treatment because of his race. In this argument, he repeats arguments already made about being denied opportunities given to other associates, being denied job assignments and being pressured to transfer to another department (to handle Aviation Board files) because of race. He also repeats his earlier arguments about being assigned to jobs because of race and having his job performance unfairly criticized. He mentions being chosen to represent Phelps as a recruiter at a minority job fair at Southern University, but admits that a white colleague was also chosen to represent the firm at this event with him. Other than this incident, which does not create a genuine issue of material fact about disparate treatment, plaintiff relied strictly on his own conclusory allegations contained in his deposition to support this claim. As stated above, this is insufficient to satisfy his burden. Plaintiff cites excerpts of partners' testimony in support of his claim that he complained about his alleged disparate treatment. The fact that he complained about alleged disparate treatment does not present a genuine issue of fact as to whether he was indeed treated disparately. While plaintiff argues that he was not treated as well as certain white associates, the only evidence presented of this was plaintiff's own opinion about this in his deposition. He did not present any facts, based on personal knowledge, showing that he was treated differently than similarly situated non-minority employees at Phelps. See, Mayberry v. Vought Aircraft Company, 55 F.3d 1086, 1090 (5th Cir. 1995).
Plaintiff next argues that he has raised a genuine issue of fact on his claim that Phelps constructively discharged him. Plaintiff argues that he has presented facts supporting his claim of a racially hostile work environment. In order to prevail in a hostile work environment claim, a plaintiff must assert and prove: 1) he belongs to a protected group; 2) he was subjected to harassment; 3) the harassment was motivated by discriminatory animus (race); (4) the harassment affected a term, condition, or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take proper remedial action. Hicks v. Central Louisiana Electric Company, Inc., 97-1232 (La.App. 1 Cir. 5/15/98), 712 So.2d 656.
In support of this claim, plaintiff refers to the contemporaneous notes he took documenting alleged incidents of racial discrimination. Plaintiff made a total of five of these notes during his four and one-half years of employment at Phelps. Two of these notes refer to his being asked to represent the Aviation Board. We have already held that plaintiff offered no support for his claim that this was a race-based assignment. In the third note, plaintiff complains that Phelps partner Danny Shaw (1) scheduled a mediation in 1991 on the Martin Luther King federal holiday; and (2) allegedly said that former President George Bush should have selected General Colin Powell as his running *1024 mate in 1992 because more black people might have voted for President Bush in that election. Regarding the mediation scheduled for Martin Luther King Day, there is no allegation by plaintiff that this date was not a regular workday for all employees of Phelps. The other comment allegedly made by Mr. Shaw could not support a claim of a racially hostile work environment. A fourth note claims that plaintiff spoke to Roy Cheatwood about not getting enough work, and alleges that Mr. Cheatwood responded that plaintiff should talk to Bill Howard. Bill Howard handled Aviation Board cases. Mr. Cheatwood denies making this comment, but even assuming arguendo that he did, this conversation would not support a claim of a racially hostile environment. The fifth note was taken after plaintiff's final evaluation in January 1995. Plaintiff claims that Mr. Cheatwood stated at a meeting with plaintiff and three partners that the evaluation forms also contained some positive comments but he would not discuss them at the meeting. This statement does not support plaintiff's claim of a racially hostile environment. None of the documentation presented by plaintiff raises a genuine issue of material fact supporting his claim that Phelps subjected him to harassment motivated by discriminatory animus.
Because he has offered no other documentation to support his claim of constructive discharge other than his own conclusory allegations, plaintiff has not satisfied his burden of showing that a genuine issue of fact exists as to whether the working conditions created by his employer were so intolerable that he was forced to resign. See, Plummer v. Marriott Corp., supra. Plaintiff argues that this Court and the Louisiana Supreme Court have already held that plaintiff was constructively discharged. Our review of the decisions in King v. Phelps Dunbar L.L.P., 98-1805 (La.6/4/99), 743 So.2d 181, and King v. Dunbar, 97-2519 (La.App. 4 Cir. 6/3/98), 716 So.2d 104, reveals no such holding. Those cases only addressed the constructive discharge issue to determine, for prescription purposes, when plaintiff had the notice necessary to pursue a constructive discharge claim against his employer.
Finally, plaintiff argues that genuine issues of fact exist on the issue of whether Phelps subjected him to intentional infliction of emotional distress. Plaintiff has not presented documentation, based upon personal knowledge, supporting a claim for intentional infliction of emotional distress. Although plaintiff alleges that he suffered severe emotional distress, he has not produced factual support to establish that he could carry his burden at trial of proving that Phelps' conduct was extreme and outrageous and that Phelps desired to inflict severe emotional distress on him or knew that severe emotional distress would be certain or substantially certain to result from its conduct.
Phelps met its initial burden of proving that there is an absence of factual support for one or more elements essential to plaintiff's claims of constructive discharge because of racial discrimination and intentional infliction of emotional distress. The burden then shifted to plaintiff to produce factual support sufficient to establish that he would be able to satisfy his evidentiary burden at trial on these claims. He failed to do so. Therefore, summary judgment in favor of Phelps was appropriate.
For these reasons, the trial court judgment is affirmed.
AFFIRMED.
JONES, J., dissents with reasons.
JONES, J., Dissents With Reasons.
I respectfully dissent and depart from the majority in finding that there was no *1025 error by the district court in granting summary judgment in favor of the defendants, Phelps Dunbar, L.L.P. In King v. Phelps Dunbar L.L.P., 98-1805 (La.6/4/99), 743 So.2d 181, the Supreme Court vacated in part and remanded this case for trial on the merits. To date, Mr. King has not been afforded his day in court as ruled by the Supreme Court.
I am of the opinion that the lower courts must follow all Louisiana Supreme Court judgments. Therefore, the district court was in error for granting the summary judgment, and the majority is in error in affirming the district court. Mr. King has not been afforded the opportunity to present his case in a full trial on the merits. Therefore, I must respectfully dissent.
NOTES
[1] The Court denied rehearing, but did not issue reasons.
[2] La. R.S. 23:1006 was subsequently repealed by Acts 1997, No. 1409, effective August 1, 1997. The rules regarding the prohibition against employment discrimination are currently set forth in La. R.S. 23:332.
[3] It is undisputed that plaintiff represented the Aviation Board after he left his employment at Phelps and opened his own law office.