DARYL E. MURRAY
v.
CITY OF BATON ROUGE, PARISH OF EAST BATON ROUGE THROUGH THE OFFICE OF PLANNING COMMISSION AND TROY L. BUNCH.
No. 2006 CA 2031.
Court of Appeal of Louisiana, First Circuit.
August 22, 2007.
NOT DESIGNATED FOR PUBLICATION
Kathryn Landry, Ieyoub & Landry, L.L.C., Baton Rouge, LA, Attorney for Plaintiff-Appellant, Daryl E. Murray.
E. Wade Shows, Dawn N. Guillot, Gwendolyn K. Brown, Office of Parish Attorney, Baton Rouge, LA, Attorneys for Defendants-Appellees City of Baton Rouge, Parish of East, Baton Rouge Through the Office of Planning Commission and Troy L. Bunch.
BEFORE: ARMSTRONG, KIRBY, AND BELSOME, JJ.[1]
Chief Judge JOAN BERNARD ARMSTRONG, AD HOC
Ms. Daryl E. Murray filed suit against her former employer, the City/Parish of Baton Rouge (the City), and her supervisor, Troy Bunch, alleging employment discrimination based on race that led to the constructive termination of her employment status. The City and Mr. Bunch filed a Motion for Summary Judgment seeking dismissal of Ms. Murray's suit with prejudice, which the trial court granted by judgment dated June 12, 2006. The trial court had issued oral reasons for judgment on December 5, 2005. Ms. Murray filed a Motion for New Trial which the trial court denied on June 21, 2006.
This appeal followed. For the reasons that follow, we affirm the judgment of the trial court.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of civil actions. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A. (2). A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966 C(2).
An adverse party to a supported motion for summary judgment may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La.C.C.P. art. 967. Summary judgments are reviewed de novo.
Ms. Murray alleged in her original petition filed in 1996 that the defendants employed her from October 31, 1994 as a Planner III on a restricted appointment. On or about January 9, 1995, her position changed to Economic Development Specialist. Ms. Murray alleged on information and belief that, at that time, she was the only African-American employed in such a position. She alleged that she was constructively terminated on November 13, 1995, her last day of employment, because of the way Mr. Bunch treated her. Ms. Murray alleged that the City and Mr. Bunch denied her equal opportunity in the terms and conditions of her employment because, unlike other employees in her position, she was denied a key to the building. She alleged that she was subjected to a hostile work environment in the following non-exclusive particulars:
(1) Mr. Bunch constantly yelled at her in demeaning tones;
(2) Mr. Bunch frightened her in meetings by pointing his finger in her face with others present;
(3) Mr. Bunch frightened her by throwing paper at her;
(4) Because of Mr. Bunch's request, she was rated lowest of all employees at the same level and subjected to re-evaluation;
(5) Mr. Bunch regularly embarrassed and demeaned her in the presence of her subordinates; and
(6) She was required to leave her job a day early without pay.
Ms. Murray sought damages under La.R.S. 51:2241 et seq[2]., § 701 et seq. of the Civil Rights Act of 1964, and 42 U.S.C.A. §2000e(b) for past and future lost salary, past and future lost benefits and mental suffering, embarrassment and anguish, past, present and future.
In 1997, Ms. Murray amended her petition deleting her federal claims.
In 2000, Ms. Murray filed an amending and supplemental petition adding a cause of action for intentional infliction of emotional distress.
Because the statutory provision cited by Ms. Murray in her petition does not provide relief, we have examined the record and, from the arguments contained in the memoranda and briefs filed on behalf of Ms. Murray, we conclude that she attempted to state a claim for relief pursuant to the provisions of La.R.S. 23:332, which provides in pertinent part:
A. It shall be unlawful discrimination in employment for an employer to engage in any of the following practices:
(1) Intentionally . . . discharge any individual, or otherwise to intentionally discriminate against any individual with respect to his . . . terms, conditions, or privileges of employment, because of the individual's race, . . .
(2) Intentionally limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee, because of the individual's race, .. .
In order to prove constructive discharge, Ms. Murray has the burden of proving that the City and Mr. Bunch intended to and deliberately created such intolerable working conditions that she was forced into involuntary resignation. To find that constructive discharge has occurred, the trier of fact must be satisfied that the working conditions to which the employee was subjected were so difficult or unpleasant that a reasonable person in Ms. Murray's shoes would have felt compelled to resign. See King v. Phelps Dunbar, L.L.P., 01-1735, p. 10 (La.App. 4 Cir. 4/2/03), 844 So.2d 1012, 1019, citing Plummer v. Marriott Corp., 94-2025, p. 9 (La.App. 4 Cir. 4/26/95), 654 So.2d 843, 849. Furthermore, to prevail in her claim that this constructive termination was race-based and thus violated the relevant statute, Ms. Murray has the burden of proving that (1) she belongs to a protected group; (2) she was subjected to harassment; (3) the harassment was motivated by discriminatory animus to her race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action. King v. Phelps Dunbar, L.L.P. at p. 18, 844 So.2d at 1023.
In order to recover for intentional infliction of emotional distress, Ms. Murray has the burden of proving that (1) the conduct of the City and Mr. Bunch was extreme and outrageous; (2) that she suffered severe emotional distress; and (3) that the City and Mr. Bunch desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct. King v. Phelps, Dunbar, L.L.P. at p. 10, 844 So.2d 1019, citing White v. Monsanto Co., 585 So.2d 1205, 1209 (La.1991).
The element of proof put at issue by the City and Mr. Bunch is the requirement that Ms. Murray prove that the harassment was motivated by animus toward her race.
In support of their motion for summary judgment, the City and Mr. Bunch provided excerpts from the sworn depositions of Ms. Murray, Mr. Bunch, William Jensen and Robert Dolese, who participated in the hiring of Ms. Murray, and Jeffrey Edwards, who was supervised by Ms. Murray when he worked for the City.
According to the depositions of Mr. Jensen and Mr. Dolese, in October of 1994, the City employed Ms. Murray under a grant because of her economic development experience. They both testified that she was hired as an Economic Development Specialist rather than as a Planner III, which was an open position, because she did not qualify as a Planner III. Later, the position was tailored to meet Ms. Murray's qualifications. Mr. Jensen testified that Ms. Murray was hired to develop an economic development strategic plan and to set up the Office of Economic Development community support committee; Mr. Jensen anticipated that she would direct the economic development thrust of the office.
Mr. Bunch testified that he was employed as Assistant Director of the Baton Rouge Planning Commission in 1993, and was promoted to Director when Mr. Dolese retired in January of 1995.
Mr. Jensen and Mr. Edwards testified that Mr. Bunch's management style had provoked complaints from many white employees, and that he treated many white employees, including Mr. Jensen and Mr. Edwards themselves, in a similar manner to the way in which Ms. Murray claims he treated her.
The defendants introduced portions of Ms. Murray's deposition testimony in which she recalled a few instances in which she had not returned timely from lunch, including once when she returned approximately two hours late and put in a leave slip. She admitted that during a period of a few weeks while she was looking for a house, she took personal calls in her office and did not recall having taken leave time to tend to her house search. She also testified to taking personal calls at work occasionally for a non-profit association of which she served as President. She also missed eight to ten days for surgery.
Ms. Murray also admitted that one of her reports, an Economic Development Inventory and Analysis Report, contained errors. Mr. Bunch commented that he had never been so embarrassed before and that a councilwoman had called him and pointed out the error. Ms. Murray admitted that the document ultimately was her responsibility.
Attached to Ms. Murray's deposition was a copy of a June 5, 1995 memorandum from Mr. Jensen to Mr. Bunch, copied to Ms. Murray and Mr. Dolese, in which Mr. Jensen noted that he had met with Ms. Murray to discuss the use of office time and work-related matters. According to the memorandum, Ms. Murray said she understood the commitment needed and would continue to devote her work time to development of economic development projects. She and Mr. Jensen talked about keeping a regularized schedule of breaks and lunch hours, allowing for occasional, pre-approved variations, and appreciating the necessity to keep deadlines.
Also attached to her deposition was a memorandum dated June 12, 1995 from Ms. Murray to Mr. Jensen concerning lunch hour and break schedules. Ms. Murray agreed in the document to a schedule of lunch hour and other breaks, and that she and her section would observe the office policies of no game playing or conducting of personal business on company time.
Mr. Edwards testified on deposition that Ms. Murray's failure to meet deadlines affected the effectiveness of the Planning Commission, because they were not getting the things done that were needed. He testified that the only occasion on which Mr. Bunch pointed a finger at Ms. Murray was when her work was not satisfactory. Mr. Edwards testified that he did not think Ms. Murray was competent to serve in her position with the Planning Commission.
She testified that while she was recuperating from surgery, she told Ronnie Edwards of Urban Restoration Enhancement Corporation (UREC) that she was
in a situation where I felt I needed to make a choice, start looking. I also told her that it was a grant was written and a chance that the grant would not be renewed.
Ms. Edwards offered Ms. Murray a job as Economic Development Project Coordinator for UREC, which Ms. Murray accepted. Ms. Murray testified that at the time she went to work for UREC, she received a higher monthly salary than she had been receiving with the City; however, there were fewer benefits and, ultimately, UREC's grant was reduced and so was her salary.
Ms. Murray testified that she left the City because of a hostile environment of "fear, control and discriminatory treatment." However, her memorandum of resignation addressed to Mr. Bunch is attached to her deposition. In that memorandum, she states only that she decided to resign effective November 14, 1995, asked that her unused sick leave be applied to her time out of the office, asked to be compensated for any remaining compensatory time and annual leave on her final paycheck and thanked Mr. Bunch for the opportunity to have worked for the City and wished him "all the best" in his future endeavors.
According to her deposition testimony, Ms. Murray did not complain of anyone's treatment of her except that of Mr. Bunch. No one told her that they believed Mr. Bunch mistreated her because of her race. Furthermore, Mr. Dolese, Mr. Jensen and Mr. Edwards testified that she did not indicate to them that her complaints concerning Mr. Bunch were race-based.
From the sworn testimony supplied by the defendants, there is no evidence that Ms. Murray's complaints were founded upon racial discrimination.
Ms. Murray entered a Statement of Disputed Material Facts, relying on her deposition and on that of her immediate supervisor, Mr. Jensen. However, she has not provided any evidence to support a finding of racial animus. While Mr. Bunch's management style may have left much to be desired, there is no evidence that he employed any racial slurs or addressed Ms. Murray by any racial epithet, or that there were any racially charged comments, activities or policies evident in the workplace. While Mr. Jensen testified that he felt Ms. Murray was picked on, he qualified that characterization by noting problems with her punctuality, meeting deadlines, and document preparation. Mr. Jensen criticized Mr. Bunch's management style, but noted that Mr. Bunch treated him (Mr. Jensen) worse than he treated any of the other employees, including Ms. Murray. Mr. Jensen is not a member of Ms. Murray's race.
Mr. Edwards' deposition testimony further supports the conclusion that Mr. Bunch treated all employees in a similar manner, regardless of their race. He also confirmed Mr. Jensen's testimony concerning the deficiencies in Ms. Murray's work performance.
The facts that Mr. Bunch pointed his finger at Ms. Murray when criticizing her performance and did not give her a passkey do not rise to extreme and outrageous behavior that would support a claim of intentional infliction of emotional distress. There is no evidence that any employee of Ms. Murray's rank or below had such passkey access. There is simply no objective factual basis for Ms. Murray's claim that she lived in fear in the workplace. Furthermore, she testified to the fact that she left her job with the Planning Commission for another job at a higher salary.
Absent some evidence of racial animus, Ms. Murray cannot sustain her burden of proof at trial, and summary judgment dismissing her claims under La.R.S. 23:332 is appropriate. Absent any evidence of extreme and outrageous misconduct by Mr. Bunch, Ms. Murray cannot sustain her burden of proof at trial, and summary judgment dismissing her claim of intentional infliction of emotional distress is likewise appropriate.
Ms. Murray also contends that the trial court erred in denying her Motion for New Trial. The trial court noted on its denial of the motion:
Plaintiff's motion does not show either peremptory grounds or the discovery of new evidence not available for the Dec. 5th, 2005 hearing on the motion for summary judgment. Nor does the court find that discretionary grounds, other than plaintiff's dissatisfaction with the court's ruling, have been alleged.
The mandatory grant of a new trial is governed by La.C.Civ.Pro. art. 1972, which provides:
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence.
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.
In light of our affirmance of the summary judgment, the first peremptory ground is inapplicable. Ms. Murray does not point to any newly discovered evidence, nor does she offer evidence that such evidence, should it exist, was not with due diligence obtainable before or during the hearing on the Motion for Summary Judgment. Since there was no jury trial, the third peremptory ground is inapplicable.
For the foregoing reasons, the judgment of the trial court is, therefore, affirmed.
AFFIRMED
BELSOME, J. DISSENTS WITH REASONS.
I respectfully dissent. There is at least one issue of material fact with respect to Ms. Murray's claim for constructive discharge. In addition to Ms. Murray's testimony, William Jensen, one of Ms. Murray's supervisors during her employment with the City, testified as to his personal observations of the working relationship between Mr. Bunch and Ms. Murray. Mr. Jensen testified that Ms. Murray "was not treated like other employees" and that she was "picked upon" by Mr. Bunch. Mr. Jensen further testified that he observed Mr. Bunch using "strong emphasis and strong direction" when speaking to Ms. Murray. Mr. Jensen stated that he did not observe Mr. Bunch speaking to any other employee in this manner, although he did state that Mr. Bunch employed this tone with him on one occasion. Whether these working conditions constituted constructive discharge and/or a hostile work environment are not issues that should be resolved through summary judgment. Accordingly, I would reverse the grant of Appellee's Motion for Summary Judgment.
NOTES
[1] The Honorable Joan Bernard Armstrong, Chief Judge, the Honorable Michael E. Kirby, Judge, and the Honorable Roland L. Belsome, Jr., Judge, all members of the Fourth Circuit Court of Appeal, are serving as judges ad hoc by special appointment of the Louisiana Supreme Court.
[2] That section provides: Cooperation between state and local commissions. The commission may enter into cooperative working agreements with local commissions which have enforceable ordinances, orders, or resolutions and professional staff under the provisions of R.S. 51:2238.