943 So.2d 1219 (2006)
Lynn SEARS
v.
HOME DEPOT, USA, INC. and Billy Rosen.
No. 2006-CA-0201.
Court of Appeal of Louisiana, Fourth Circuit.
October 18, 2006.
*1222 Gregory A. Dupuy, Clarence O. Dupuy, Jr., Dupuy & Dupuy, Metairie, La, for Plaintiff/Appellant.
D. Michael Dendy, New Orleans, LA, for Defendant/Appellee, Billy Roson.
Shelley M. Sullivan, Cornelius R. Heusel, Jones Walker Waechter Poitevent Carrere & Denegre, New Orleans, LA, for Defendant/Appellee, Home Depot U.S.A., Inc.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY and JUDGE ROLAND L. BELSOME).
JOAN BERNARD ARMSTRONG, Chief Judge.
The plaintiff, Lynn Sears, appeals from the trial court's summary judgment dismissing her claim for damages allegedly caused by intentional discrimination in employment based on race and false imprisonment.[1] On May 28, 1999, Ms. Sears *1223 filed suit against Home Depot, USA, Inc. and Billy Roson, claiming that she was employed by Home Depot as a cashier, ultimately supervised by Mr. Roson at the time of her "termination and/or constructive discharge."
Home Depot answered, asserting as affirmative defenses the exercise of reasonable care to prevent and to correct promptly any complained of behavior, limitations and Ms. Sears's failure to take preventative or corrective opportunities provided by Home Depot. Home Depot also claimed its actions were motivated solely by legitimate, nondiscriminatory factors and that it acted in good faith at all times. Furthermore, Home Depot alleged that Ms. Sears was not terminated, but voluntarily resigned from her position. Home Depot denied vicarious liability for Mr. Roson's alleged conduct, averring that such conduct, if it occurred, was outside the course and scope of his employment, not employment rooted, or incidental to the duties of employment. Home Depot also affirmatively alleged Ms. Sears's failure to mitigate damages.
Mr. Roson answered similarly, denying Ms. Sears's claims against him and claiming the affirmative defense of limitations and good faith.
The case was consolidated on March 19, 2003 in the Civil District Court with No. 99-7063, Chaney v. Home Depot, USA, Inc.[2] Because counsel for the defendants had not been served with a copy of the consolidation motion, the trial court vacated its consolidation motion on November 22, 2004.
On February 22, 2005, counsel for the plaintiff filed a motion to set for trial on the merits, certifying that the case was then ready for trial.
Home Depot moved for summary judgment on April 1, 2005, and Mr. Roson filed a similar motion on April 20, 2005. For the reasons stated in the supporting memoranda, the trial court granted summary judgment dismissing Ms. Sears' claims against both defendants on July 7, 2005.[3]
In support of the motions for summary judgment, the defendants provided a copy of Ms. Sears' deposition taken on January 4, 2001 and the affidavit of Tammy Esskew, Home Depot's Employment Practices Manager. Attached to Ms. Esskew's affidavit are copies of Ms. Sears' resignation letter, of Home Depot's written harassment and discrimination policy, of Home Depot's Open Door Policy and of Ms. Sears's charge of discrimination and dismissal and notice of rights received from the EEOC in respect to an EEOC claim filed by Ms. Sears. The record also contains portions of Ms. Esskew's oral deposition taken on March 9, 2001 and of Mr. Roson's deposition taken on June 29, 2004 in the Chaney case.
The Home Depot Orientation Handbook[4] in 1997 provided in pertinent part:

*1224 Equal Employment Policy
The Home Depot is an equal opportunity employer. The company will not, under any circumstances, discriminate against an associate with regard to race, age, sex, color, national origin, religion or disability.
Harassment/Discrimination Policy
Home Depot is committed to ensuring that our associates work in an environment of mutual respect, free of harassment and discrimination. Home Depot does not tolerate harassment or discrimination of associates, customers, or vendors with regard to race, sex, color, age, religion, national origin or disability.
If you believe you are being harassed or exposed to conduct you find offensive, ask the person to stop immediately. If the conduct continues, contact a member of management. If you are not comfortable discussing the problem with your manager, or if you believe that your concern is not being appropriately resolved, contact your District Manager, Human Resource Manager or Human Resource Director.
The Impact Line is also available for associates who wish to report harassment, but want to remain anonymous. Impact Line: 1-888-22IMPACT.
Open Door Policy
Even with open communication, your immediate supervisor may not be able to solve all your concerns or problems. Home Depot cares about these concerns.
If your Department Supervisor or Assistant Manager cannot help you, the problem should be taken next to the Store Manager, District Manager, Divisional Vice President, and finally, to the Divisional President.
Keep in mind that your Human Resource manager is available to help you with any problems. Because we care about your concerns, no retaliation is ever taken for using the Open Door Policy.
The evidence establishes that Ms. Sears is a person of African descent, hired by Home Depot on February 7, 1994 as a cashier, becoming a full-time employee on February 13, 1995. She testified that she received increases in her hourly wages throughout her years at Home Depot, and was promoted to head cashier in August of 1997. She voluntarily resigned that position and returned to a position as cashier on December 15, 1997. In her deposition, Ms. Sears denies that this voluntary demotion was discriminatory. Five months later, on May 19, 1998, Ms. Sears sent the following letter of resignation to Home Depot:
To Whom It May Concern:
I, Lynn Sears, am turning in my two weeks notice of my termination of my employment. At the present time I am unable to meet my job expectations. As ["you" is struck out] management knows I have a minor child with special needs. I ["`m" is struck out] also have some personal issues that could affect my job performance. As a four year employee I've had a lot of great times here at the Home Depot. And I hope to return one day in the near future. I hope that I won't cause a great inconvenience to anyone. But I like being the best of the best. And right now I'm off track and I need to regroup. It's been a pleasure.
Thanks in Advance,
[Signed] Lynn Sears
*1225 Ms. Sears testified that approximately a year after she began working at Home Depot, one of her sons was diagnosed with diabetes, following which she requested and received an assignment to a newly-created hardware cashier position and a schedule change to accommodate the situation. This requested schedule change was in effect from her initial request until she resigned from her job. It is suggested that the position of hardware cashier was created to accommodate Ms. Sears's needs.
Although Mr. Roson allegedly "put pressure" on her to work a flexible schedule, she admitted in deposition that Mr. Roson wanted all his employees to do so, and that he allowed her continually to work the accommodation schedule.
Ms. Sears's son's condition did not improve, and in May of 1998 she was advised by a social worker that if the child did not improve, he could be removed from Ms. Sears's custody. In response, she met with her supervisor, Don Quinn, the store manager, Mr. Roson, and Ms. Brenda Long, a Home Depot vault associate, and asked that she receive home health care for her son through Home Depot's benefits program. Mr. Rosen immediately contacted Home Depot's benefits department, and the group conferred by phone for about two hours[5]. Ms. Sears was advised that the health care benefit would be given to her, but that it would not go into effect for two or three weeks. The reason for the delay was in order to confirm the situation with the child's doctor and process the paperwork. One or two days after the meeting, Ms. Sears called to advise Home Depot she would not be able to work on weekends until she obtained adequate care for her son. Mr. Roson acquiesced in this. Ms. Sears admitted on deposition that she was not disciplined for this refusal to work on weekends. Nonetheless, on the next workday, she submitted her letter of resignation, giving her two weeks' notice, citing personal reasons both in the letter and in her deposition. Ms. Sears worked for several days following submission of her letter, and used vacation days for the remainder of the two weeks' notice. She testified that she attended a Home Depot picnic following her resignation.
In her petition, Ms. Sears makes the following claims of racial discrimination: (1) she was hired at a lower wage than "white" employees; (2) she was not promoted as quickly as were "white" employees; (3) Home Depot denied its employees of African descent medical treatment; (4) Home Depot required its employees of African descent to undergo more frequent drug tests than its "white" employees; and (5) "white" employees were allowed requested schedule changes while employees of African descent were not.
Discriminatory Scheduling: Although Ms. Sears claims that two white employees were treated more favorably than she with respect to scheduling, it is uncontroverted that Home Depot acceded to her scheduling requests. Furthermore, Ms. Sears admitted that one of the "white" employees she identified as a comparable did not work as a full-time employee, and she was not aware of the other allegedly comparable "white" employee's schedule.
Discriminatory Wages: Ms. Sears claims that two "white" employees were hired at higher rates of pay than her starting rate of $6.00 per hour. Ms. Sears *1226 testified that she had worked previously as a Department Head at Sam's Club, earning $7.70 an hour, and had asked to be paid at that same rate by Home Depot. However, on her Home Depot employment application, she listed no work experience for the two or three years between the time she left Sam's Club and the time she applied for a position at Home Depot. The "white" employee in question was hired at a rate of $6.50 per hour; however, it is uncontroverted that that employee came to Home Depot directly from Sam's Club, and had no break in her employment history. Therefore, the cases are not similar. The second "white" employee cited by Ms. Sears was employed as a Sales Associate, a position qualitatively different from Ms. Sears's job as a cashier. Different positions with different qualifications, even if they are superficially comparable, are not "similarly situated." Ceasar v. Lamar University, 147 F.Supp.2d 547, 552-53 (E.D.Tex.2001).
Discriminatory Promotion: Ms. Sears alleges that two employees were promoted before she was promoted. She claims that she was given full-time status after about a year, in 1995, and was denied a supervisory position in 1996. She also claims that her promotion to the position of head cashier August 25, 1997 was discriminatory, but not her subsequent voluntary demotion back to her position as a cashier. Ms. Sears filed her suit on April 29, 1999, three and four years after accrual of the first two claims, and nineteen months after accrual of the third. Thus, these claims are untimely.
Discriminatory Drug Testing: Ms. Sears testified that when she was promoted to head cashier she was required to pass a drug test. She admitted in her deposition that she had no knowledge of whether or how frequently other employees were tested. The Home Depot Orientation Handbook of 1997 provided in its Substance Abuse Policy that the company may require associates to be tested for substance abuse for promotion.
Discriminatory Discipline: Ms. Sears testified at her deposition that she was never disciplined substantially in any way during the course of her employment with Home Depot. She testified that Assistant Manager Daniel Boone disciplined her on one occasion. Ms. Sears had missed a bus and called to tell Mr. Boone she was running late because she had missed the bus. He told her to call him back, which she did, but spoke to another employee and told him that the bus had not yet arrived. She called Mr. Boone again, and testified that he told her not to call back, but to get to work when she could. When she arrived, Mr. Boone reprimanded her, and told her that she should call in advance and could not "just come to work when I very well feel like it." Ms. Sears compared this situation to that of a "white" employee whose daughter had been injured. That employee was allowed to come to work when the child finished her therapy and, according to Ms. Sears, was not required to call each time in advance. There is no evidence that this "reprimand" was made a part of Ms. Sears' permanent employment record, or that it constituted anything more than a verbal admonition to call under similar circumstances, that is, if she missed a bus.
Discriminatory Lack of Expression of Care: Ms. Sears contends that District Manager Larry Frenkel discriminated against her because he never called to ask how her son's medical condition was progressing. In her deposition, Ms. Sears admits that Mr. Frenkel never spoke to her, and specifically never said anything racially offensive to her. While expressions of solicitude by management are likely *1227 to contribute to a pleasant workplace, the law does not require such expressions.
Hostile Work Environment: Ms. Sears claims that certain Home Depot employees made racially insensitive comments in her presence, which comments were not directed to her nor did she complain to Home Depot's management concerning the comments. She testified that a department supervisor, whom she testified held a position under management, said that he would never "work under a black man and no black man would ever be" his boss. She claims that an assistant manager agreed with racial comments made by Mr. Rosen, but did not make racial comments himself. Ms. Sears testified that Mr. Roson said, in her presence, "I don't know why blacks get so upset when white people call them n____s when they call each other n____s all the time." She also testified that Mr. Rosen said that African-Americans were more concerned with their appearance than with owning a home or car, and commented that he would have to buy sunglasses because another African-American employee had so many gold teeth. Ms. Sears testified that these incidents occurred between August and December of 1997, when she was head cashier. She testified that some time prior to that time, Mr. Roson said she was pretty and asked her if she had any "white" ancestors because of her light skin color.
Discrimination in Provision of Health Care: Ms. Sears testified that during the May 1998 meeting to work out a plan for obtaining home health care benefits for her son, Mr. Roson and Mr. Quinn would not allow her to leave the room. After this alleged detention, however, she remained in the room during a two-hour conference call concerning provision of this benefit for her son. She admitted at her deposition that at the conclusion of the meeting, she was advised that this benefit would be arranged for her son. Ms. Sears claimed at her deposition that during this meeting, Mr. Roson made an offensive comment questioning why African-American men do not take care of their children. However, she admitted that when she brought this complaint to the EEOC, and was interviewed by an African-American agent, her affidavit reflected only that Mr. Roson asked where the child's father was and asked why the father was not helping to take care of the child. That claim was not included in the petition in the instant case.
Ms. Sears admitted on deposition that she was aware of the anti-harassment and discrimination policies and procedures Home Depot had in place, and acknowledged having watched a video presentation and having received training in the policies and procedures. The record contains her signed acknowledgement of receipt of the Home Depot Handbook as well. Her only complaint prior to her resignation was that a sales associate was earning more than she was. She confronted Mr. Roson about this disparity, since she had believed he was no more qualified than she; however, the positions of Sales Associate and Cashier did not command the same salary.
Shortly after that complaint, Mr. Roson offered Ms. Sears a promotion to the position of Head Cashier, with a pay increase. Ms. Sears accepted the position on August 25, 1997, but now complains that the promotion was an act of employment discrimination because Mr. Roson allegedly told her he wanted her to "watch the blacks". Ms. Sears admitted that Mr. Roson never told her that she did not otherwise deserve this promotion.
Appellate courts review summary judgment de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/2000), 755 So.2d *1228 226, 230. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions such as this. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2). A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B.
Ms. Sears assigns as error the trial court's allocation of the burden of proof in this case and contends that the trial court made findings of fact, weighed evidence and made credibility determinations, all of which were inappropriate in the context of summary judgment. There are no reasons for judgment in the record. However, since we review this summary judgment de novo, we will apply the current summary judgment standard and the standard for burden of proof to the materials submitted in support of and in opposition[6] to the motions for summary judgment. Under the amended summary judgment procedure, the burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966 C(2).
An adverse party to a supported motion for summary judgment may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La.C.C.P. art. 967; Danna v. Barq's, Inc., 612 So.2d 253, 255 (La.App. 4 Cir.1992). Mere conclusory allegations, improbable inferences and unsupported speculation will not support a finding of a genuine issue of material fact. King v. Phelps Dunbar, LLP, 01-1735, p. 16 (La.App. 4 Cir. 4/2/03), 844 So.2d 1012, 1022. Such allegations, inferences and speculation are insufficient to satisfy the opponent's burden of proof, even if contained in a deposition. King, supra at pp. 16-17, 844 So.2d at 1023.
Ms. Sears assigns as error the trial court's granting summary judgment regarding subjective facts such as intent, knowledge, malice and good will. However, the jurisprudence does not support this argument. Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the opposing party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation. Haney v. Delta Petroleum Co., Inc., 01-0636, p. 5 (La.App. 4 Cir. 3/6/02), 811 So.2d 1200, 1204.
*1229 Ms. Sears contends that the district court's judgment should be set aside because it allegedly is inconsistent with the Minute Entry of the United States District Court for the Eastern District of Louisiana in Chaney v. Home Depot, USA, Inc., et al., Civil Action No. 99-1792.[7] The federal court remanded Mr. Chaney's employment discrimination suit to state court, along with two other cases against the same defendants, Donahue v. Home Depot, and Sears v. Home Depot[8]. The issue before the court was Home Depot's allegation that the plaintiffs had joined their claims against the company and Mr. Roson fraudulently to defeat federal jurisdiction of the claim against the company. The federal standard is one of an arguable and reasonable basis for predicting that state law might impose liability on the facts involved, accepting as truthful all allegations contained in the complaint (petition). The court noted that in resolving fraudulent joinder claims, courts may pierce the pleadings and take into consideration summary judgment-type evidence, including affidavits and depositions. However, the ruling turned on the allegations of the petition, which the trial court found stated a prima facie case on its face. Pretermitting the fact that a decision of a federal district court to remand a case to state court is not binding on this Court's review of motions for summary judgment, we note that the federal court was not presented with motions for summary judgment, and its ruling on the remand is in no way dispositive of the motions filed in state court.
Louisiana provides an action for employment discrimination based on race in La. R.S. 23:331 et seq.[9] and La.R.S. 51:2231 et seq[10]. La.R.S. 23:332 provides in pertinent part:
A. It shall be unlawful discrimination in employment for an employer to engage in any of the following practices:
(1) Intentionally fail or refuse to hire or to discharge any individual, or otherwise to intentionally discriminate against any individual with respect to his compensation, or his terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin.
(2) Intentionally limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee, because of the individual's race, color, religion, sex, or national origin.
Because this statute is similar in scope to the federal anti-discrimination prohibitions found in title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), Louisiana courts have routinely looked to federal jurisprudence for guidance in determining whether a claim has been asserted under La.R.S. 23:332 A. Plummer v. Marriott Corp., 94-2025 (La.App. 4 Cir. 4/26/95), 654 So.2d 843, 848.
*1230 It is clear that, as a matter of law, Ms. Sears's claims of employment discrimination, all of which were brought under state law, are governed by the one-year liberative prescription of La.C.C. art. 3492. See, King v. Phelps Dunbar, LLP, 98-1805, pp. 6-7 (La.6/5/99), 743 So.2d 181, 186-87. The claims of disparate pay and promotion relate to discrete acts that put Ms. Sears on notice of the alleged acts of discrimination, starting the prescriptive period. See Huckabay v. Moore, 142 F.3d 233, 240 (5th Cir.1998). The first act of discrimination, by Assistant Manager Boone, occurred on February 7, 1994, when she began working at Home Depot. The claim that a "white" male employee was paid more although he had worked for a shorter period of time, albeit as a Sales Associate rather than as a Cashier, occurred prior to August of 1997 when Ms. Sears was promoted to Head Cashier. The claims that white employees were (a) made a full-time employee before she, and (b) promoted to a cashier supervisory position before she was, arose before she was made a full-time employee in early February of 1995. Ms. Sears's claim that she was promoted to head cashier because of her race arose in August of 1997. Ms. Sears filed the instant action on April 29, 1999. There is no allegation or evidence of facts giving rise to a plea of contra non valentem. Furthermore, Ms. Sears has not addressed the prescription issue in her appellant's brief. Thus, all the foregoing claims are time barred.
Ms. Sears argues in brief that she has demonstrated a claim for employment discrimination based on not being allowed to work a set schedule from 8:00 in the morning until 5:00 in the evening. This schedule was necessary because her insulin-dependent child needed to receive an injection between 5 and 6 p.m. daily, and she was the only person competent to administer this injection. However, she admits that she was allowed to work the set schedule, although Mr. Roson encouraged her to find a qualified baby-sitter so that she could work the store's standard flexible schedule. There is no allegation or evidence that she was forced to jeopardize her son's health by reason of the hours she worked, as the evidence shows without contradiction that she did work the set schedule she requested following her request.
Ms. Sears argues in brief that her voluntary demotion from the position of head cashier to her previous position of cashier constitutes an adverse and discriminatory employment action. In order to constitute an adverse employment action, conduct must be an ultimate employment decision. Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (5th Cir.1997). These ultimate employment decisions include hiring, firing, promotion and compensation. Id. However, in her deposition, she testified that she asked to be removed from the position of head cashier. At her deposition, Ms. Sears testified that Mr. Roson had told her he would like her to help him to understand the black employees, and she did not want to do so and resigned the position. In her affidavit, Ms. Sears claims that she resigned the head cashier position because she was unable to keep up the schedule of leaving at 10:30 p.m. and returning at 5:30 a.m. Whichever reason, if either, is true, the decision to resign the promotion was Ms. Sears's decision, and was voluntary.
Ms. Sears also argues that her resignation was a constructive termination, and that she resigned because she was not allowed to remain at home on weekends to attend to her son's special needs and was denied home health care benefits for her son. Although Ms. Sears argues in brief that she was required to work weekends *1231 until home health care benefits for her son could be arranged, this argument is inconsistent with her deposition testimony. She testified that when she called in to report that she could not work weekends until the benefits were in place, Mr. Roson responded by saying, "Well, all right." She also admitted on deposition that she was not disciplined for having failed to work the weekend prior to her resignation. Furthermore, she admits on deposition that the company had approved her for home health care benefits, and the delay was occasioned only by the necessity of obtaining a physician's certification and completing paperwork.
Ms. Sears also contends that she was subjected to working in a hostile workplace. In order to state a claim for a hostile work environment, Ms. Sears has the burden of proving that (1) she belongs to a protected group; (2) she was subjected to harassment; (3) the harassment was motivated by discriminatory animus (race); (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment and failed to take proper remedial action. Brooks v. Southern University and Agric. and Mech. College, 03-0231 (La.App. 4 Cir. 7/14/04), 877 So.2d 1194, 1220, writ denied, 04-2246 (La.11/19/04), 888 So.2d 208; Hicks v. Central Louisiana Elec. Co., Inc., 97-1232, p. 3 (La.App. 1 Cir. 5/15/98), 712 So.2d 656, 658-59. The issue in this case is whether Ms. Sears has shown that she will be able at trial to prove the fourth element, that the harassment affected a term, condition, or privilege of employment.[11] Ms. Sears contends that the hostile work environment caused a constructive discharge, and that this constructive discharge was a tangible employment action.
Hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 n. 10, 122 S.Ct. 2061, 2074 n. 10, 153 L.Ed.2d 106 (2002). Sexual harassment cases are instructive in deciding cases involving claims of racial harassment.
Ms. Sears claims that various comments were made to her or in her presence from August to December of 1997 when she held the position of head cashier. According to her deposition testimony, she overheard a comment from an assistant manager that he would never work under a black man, and that no black man would ever be his boss. She also claims that she overheard a coworker agree with Mr. Roson when the latter allegedly made derogatory comments about African-Americans. Ms. Sears testified to seven comments made by Mr. Rosen to support her claim of a hostile work environment: (1) expressing a lack of understanding why African-Americans get upset when white people use racial epithets but not when other African-Americans use the same racial epithets; (2) expressed a belief that African-Americans are more concerned about their clothes and appearance than about homes and cars; (3) said he would have to buy sunglasses because another African-American employee had so many gold teeth; (4) told Ms. Sears that before he was married he "ran [with] a bunch of women" and that she probably would have been one of these women[12]; (5) told Ms. Sears she was *1232 pretty;[13] (6) commented on Ms. Sears's light skin color and asked her which member of her family was white; and (7) disparaged African-American men, including Ms. Sears's son's father, for not taking care of their children.
The issue is whether these incidents, taken in the context of the four years Ms. Sears worked at Home Depot, were so egregious as to alter the conditions of employment and destroy equality in the workplace. DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 593 (5th Cir.1995). The United States Supreme Court has emphasized that the federal employment discrimination laws are not intended to perform the function of a "civility code". Proof that alleged conduct is both objectively and subjectively offensive is necessary to withstand summary judgment and to filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing. Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).
In order to prevail on the defendants' motion for summary judgment on the hostile workplace issue, Ms. Sears must show a genuine issue of material fact as to whether the conduct is so hostile and abusive that a reasonable person would have been offended by it and also that she, subjectively, actually was offended. Furthermore, was the conduct so egregious as to alter the conditions of employment and destroy equality in the workplace. The lack of any contemporaneous complaints by Ms. Sears argues strongly against there being evidence of subjective offense. Evidence of objective offense rising to discriminatory changes in the terms and conditions of employment is also lacking. While Mr. Roson's comments, if true, are clearly insensitive and indicative of extraordinary ignorance on his part, we are constrained by the Supreme Court's injunction that isolated incidents, unless extremely serious, and offhand comments will not amount to discriminatory changes in the terms and conditions of employment. Faragher, supra. In determining whether a work environment is objectively hostile or abusive, all circumstances must be analyzed, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. Shepherd v. Comptroller of Public Accounts of State of Texas, 168 F.3d 871, 874 (5th Cir.1999).
Having reviewed the evidence of record and the applicable jurisprudence, we are forced to conclude that, while insensitive and reflecting profound ignorance on the part of the speaker, these racial comments do not rise to the level necessary to support a declaration that the work environment is objectively hostile or abusive. In Jackson v. Flint Ink North American Corp., on rehearing, 382 F.3d 869 (8th Cir.2004), the court considered whether six incidents of racially derogatory language and graffiti from managers and coworkers during an eighteen-month period constituted an objectively hostile work environment. The plaintiff testified by deposition to several incidents including the use of racial epithets by his managers and co-workers and the appearance of racially derogatory graffiti. He testified that he heard his supervisor refer to him as "that damn n_____" after an altercation during which the plaintiff threatened two co-workers *1233 after one of them spit either on his foot or somewhere in his work area. He also testified that as he was leaving the plant manager's office, he heard the manager use the term "black" or "damn black" in some unspecified context. He also testified to four instances in which his co-workers had made racially offensive remarks. One used the phrase "n_____ rigging" at a picnic table. Another co-worker called the plaintiff a "n_____". A third co-worker once expressed his dislike for music the plaintiff was listening to saying "We don't listen to that damn black music around here, n_____ s____, radio." The same co-worker, during the incident in which the plaintiff was concededly "in the face of" another co-worker who had spit in his work area, pulled the other co-worker away and exclaimed, "f n_____". Finally, the plaintiff testified that Ku Klux Klan graffiti, consisting of Mr. Jackson's name, the letters KKK and a burning cross, appeared in the shower area and near the back door. Other comments were found concerning the fact that the plaintiff had been found sleeping in the workplace. The court held that an objective observer would regard the combination of Klan-related graffiti with Mr. Jackson's name as a threat of serious bodily harm if not death to Mr. Jackson, and, when this threat is combined with all of the other incidents that Mr. Jackson complained of, the matter survived the defense motion for summary judgment. The court noted, "We admit that this matter is not altogether free from doubt and we think that this case is on the cusp of submissibility." Jackson, 382 F.3d at 870.
In the instant case, there is no evidence of such a serious threat of bodily harm, nor were there examples of use of racial expletives directed at Ms. Sears.
Even a single racially derogatory remark is certainly regrettable, and we doubtless seek an environment when racial, ethnic and sexual slurs will have been eliminated from all workplaces. However, as a matter of law, the isolated examples to which Ms. Sears testifies cannot support a finding of a hostile workplace.
An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, consisting of two elements: (1) that the employer exercised reasonable care to prevent and correct promptly any harassing behavior, and (2) that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Faragher v. City of Boca Raton, 524 U.S. at 777-78, 118 S.Ct. at 2278. This defense is not available, however where the supervisor's harassment culminates in a tangible employment action, such as discharge or demotion. Faragher v. City of Boca Raton, 524 U.S. at 808, 118 S.Ct. at 2293. The Supreme Court did not address directly the issue of whether a "constructive discharge" constitutes a "tangible employment action" that would deprive the employer of the affirmative defense.
In Pennsylvania State Police v. Suders, 542 U.S. 129, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004), the Supreme Court announced the burden of proving that a constructive discharge was caused by a hostile work environment. The plaintiff must first establish that discriminatory conduct in the workplace was so pervasive that it created an environment abusive to the employee. Once that is established, the plaintiff must then demonstrate that *1234 the abusive environment was so intolerable that resignation qualified as a fitting response. Furthermore, an employer may defend against a constructive discharge claim by showing both that it had installed a readily accessible and effective policy for reporting and resolving harassment complaints and that the plaintiff unreasonably failed to avail herself of that preventive or remedial apparatus. Pennsylvania State Police v. Suders, 542 U.S. at 134, 124 S.Ct. at 2347. This affirmative defense is unavailable to an employer if the plaintiff resigns in a reasonable response to an employer-sanctioned adverse action officially changing her employment status or situation. The Supreme Court gave as examples a humiliating demotion, extreme cut in pay, or a transfer to a position in which the employee would face "unbearable working conditions." Id.
Ms. Sears has not produced any evidence of an employer-sanctioned adverse activity. She admitted on deposition that she did not work weekends following the home health benefits meeting, and was not disciplined in any way for this. She was not demoted, her pay was not extremely reduced and she was not transferred to an unbearable position. Furthermore, Ms. Sears's letter of resignation makes no mention of any allegations that would give rise to a finding of constructive discharge. She says only that she is unable to meet her job expectations and has personal issues that could affect her job performance. She expressed hopes to return to Home Depot in the near future and that her departure would not cause a great inconvenience. She closes her letter with the words, "It's been a pleasure." For the foregoing reasons, Home Depot in entitled to prove the affirmative defense previously discussed.
Home Depot had the burden of showing that there was no genuine issue of material fact as to its affirmative defense.
While proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense. Faragher v. City of Boca Raton.[,] 524 U.S. at 778, 118 S.Ct. at 2279.
The evidence is uncontroverted that Home Depot maintained a hotline and open door policy for complaints such as those noted in this suit. It is also uncontroverted that these policies were posted in the break room, and Ms. Sears admitted having received a copy of the Home Depot employee orientation material. There is no evidence that Ms. Sears availed herself of the anonymous or non-anonymous procedures to report her claims of Mr. Roson's offensive language.
Based on the uncontroverted evidence of record, we find that Home Depot demonstrated that it exercised reasonable care to prevent and correct harassing behavior promptly. Furthermore, it is clear that Ms. Sears did not reasonably take advantage of the preventive and corrective policies and procedures provided by Home Depot. Because Home Depot proved its affirmative defense, we are forced to conclude that Ms. Sears has not met her burden of proving that she was constructively discharged or that her resignation was, as a question of law, the result of *1235 harassment affecting a term, condition or privilege of employment. Because of this failure to meet the burden of proof under La.C.Civ.P. art. 966, we are compelled to affirm the summary judgment granted in favor of Home Depot on the hostile work environment claim.
Since counsel for Ms. Sears moved in the trial court to set the case for trial, the matter was certified as ready for trial, allowing the inference that discovery has been completed.
For the foregoing reasons, we are compelled, as was the trial court, to find that Ms. Sears will not be able to prove her case against Home Depot and that summary judgment in that defendant's favor was properly granted.
Ms. Sears also makes claims of false imprisonment and intentional infliction of emotional distress against Mr. Roson. According to the petition, the only action that could possibly be considered false imprisonment was employee Don Quinn's locking a conference room door on May 15, 1998, allegedly on Mr. Rosen's instruction, after, according to the petition, Ms. Sears "became very upset and began to cry hysterically" during the health benefits conference. Therefore, the claim is untimely.
The final claim is Ms. Sears's allegation that Mr. Roson intentionally inflicted emotional distress upon her. Ms. Sears's letter of resignation is dated May 18, 1998. Ms. Sears makes no allegation of any conduct on Mr. Roson's part after she left Home Depot. Therefore, that claim is also untimely.
For the foregoing reasons, we affirm the judgment of the trial court granting summary judgment in favor of Home Depot USA, Inc. and Billy Roson.
AFFIRMED.
BELSOME, J., concurs with reasons.
BELSOME, J., concurs with reasons.
I concur in the result reached by the majority. To overcome a motion for summary judgment the non-mover must show that there are genuine issues of material fact to be presented to a fact finder. The allegations set forth by Ms. Sears suggest despicable behavior. However, a de novo review of the record does not provide any supporting evidence for the claims asserted. Therefore, I agree that the trial court must be affirmed.
NOTES
[1] In her appellant's brief, Ms. Sears suggests that Mr. Roson is guilty of sexual harassment; however, that claim is not raised in the petition filed in the trial court or in the assignments of error on appeal.
[2] That case resulted in a summary judgment dismissing Mr. Chaney's suit based on a claim of racial discrimination against Home Depot. The trial court's summary judgment was affirmed by this Court in 2005-CA-1484.
[3] Ms. Sears refers in brief to an opposition to the motions for summary judgment, affidavits of Ms. Sears, Elzie Berry, Home Depot's Regional Human Resources Manager and of former Home Depot employee Roy Lee Chaney. She also attached to her brief copies of documents filed in the United States District Court. However, none of these documents are a part of the record on appeal. As material outside of the record, these documents will not be considered.
[4] Ms. Esskew testified on deposition that the handbook is available to all employees. In addition, the company's anti-discrimination policy is posted in the break room. However, Ms. Sears testified at her deposition that she was not aware of the Impact Line described therein and had never used it.
[5] At some point, according to Ms. Sears, Mr. Roson suggested to Ms. Sears that her ex-husband and the child's father should take a more active interest in the situation, whereupon Ms. Sears began to cry hysterically, and Mr. Quinn locked the conference room door at Mr. Roson's request until she had regained her composure.
[6] The record does not contain Ms. Sears's opposition to the motions for summary judgment. Attached to the appellant's brief are copies of Ms. Sears's deposition taken on January 4, 2001; the affidavit of Roy Lee Chaney; the deposition of Elzie Berry, Home Depot Human Resources manager, and Ms. Sears's affidavit dated May 25, 2005. while the affidavit bears the Civil District court heading, it is not date stamped nor is it conformed to show when or by whom it was filed, if, in fact, it was filed in that court.
[7] A copy of that Minute Entry is attached to the appellant's brief, but is not a part of the record on appeal. For that reason, we have not considered it substantive evidence in this case; however, it is useful background to the discussion of this assignment of error.
[8] In a footnote, the federal court notes that "[a]lthough the court will issue separate rulings with regard to those cases, the underlying logic and arguments presented by the parties in each case are identical."
[9] Formerly La.R.S. 23:1006 et seq.
[10] The latter statute, which provides a procedure for redress through the Louisiana Commission on Human Rights, is not applicable to Ms. Sears's claims, because she has not availed herself of that process.
[11] The notice element is not required in a hostile environment case where it is alleged that the employee's supervisor committed the alleged harassment. Nash v. Electrospace System, Inc., 9 F.3d 401, 405 (5th Cir.1993).
[12] This is not on its face a racial comment.
[13] This is not on its face a racial comment.