LEDET, J.,
dissents with reasons.
_JjAlthough I agree with the majority’s holding that a casino qualifies as a merchant under La. R.S. 9:2800.6, I disagree with the majority’s holding that the trial court erred in granting the defendant’s (Harrah’s) motion for summary judgment. I would find that the plaintiff (Ms. Thomas) failed to establish an unreasonable risk of harm or a defect and thus affirm the trial court’s decision.
In her petition, Ms. Thomas averred that the she “tripped due to an electrical extension cord/vacuum cord,” which an employee of Harrah’s was using. In her deposition, however, Ms. Thomas testified that she did not trip on an extension or vacuum cord. Rather, she testified that she tripped on a gold floor plate, which covered an electrical outlet. She explained that the floor plate was embedded in the carpet and that it was raised off the ground. She estimated the floor plate was raised “[a] couple of millimeters” or “[mjaybe like a fingernail length” or “[mjaybe inches.”
In response to defense counsel’s question regarding how the floor plate caused or contributed to her fall, Ms. Thomas stated: “As I was walking, I slid to the right. When I landed on the ground, I looked to see what could I have fallen on, and I looked at the floor plate. The floor plate was off the ground. The carpet was raveled. The floor plate could have been — ” In response to defense counsel’s | ^questioning of whether she tripped over the carpet, Ms. Thomas testified: “[tjhe carpet could have prevented me from holding my foot in place because of the ravel. It could have prevented me from doing that, Tnaking me lose my balance.” Finally, she testified that what caused her to fall was that she “slipped off the plate” and that she noticed “the plate was a little shaky, loose, so.”
In support of its motion for summary judgment, Harrah’s presented affidavits of its Risk Manager, Michael Parr, and the casino’s Director of Facilities, Patrick Maher. They attested that the casino had no prior complaints about the elevated electrical outlet floor plates located throughout the casino. Mr. Maher attested that the practical purpose of the numerous brass floor plates located throughout the casino floor was to “cover in-floor electrical outlets or phone/data connections.” He further attested that “[tjhe brass plates are not polished; cleaning staff vacuums over them while vacuuming the floor.” He still further attested that he was “unaware of any complaints regarding the elevation of brass floor plates or claims that the plates or ‘slippery.’” Mr. Parr attested as follows:
“I’ve examined the slip/fall or trip/fall complaints in the casino since 2006 to determine if any other patron or employee complained of slippery and/or elevated electrical outlet floor plates located throughout the casino floor. I found no complaints or reports regarding the condition of the floor plates (gold in color).”
Based on these affidavits, Harrah’s established its lack of notice that the floor plate presented an unreasonable risk of harm or a defect.
The only support Ms. Thomas offered in opposition to the Harrah’s motion was her own deposition testimony, summarized *1284 above, and color photographs of the floor plate and the raveled carpet. As Harrah’s emphasizes, Ms. Thomas failed to retain an expert to establish the plate, the carpet, or the combination of the two presented a defect.
Concluding that Ms. Thomas established the existence of a genuine issue of material fact, the majority reasons as follows:
|sMs. Thomas alleged that damaged carpet around an electrical outlet caused her to fall. Based on the photograph exhibits provided by the plaintiff, the damaged carpet did exist. The defendant also should have known of this condition considering that the area was regularly vacuumed and traversed by its employees. There is a question as to whether the defendant exercised reasonable care.
The majority’s statement that Ms. Thomas alleged the carpet caused her to fall is belied by her deposition testimony and by the allegations of the petition. In her petition, she averred that she fell on an electrical cord. As the trial court pointed out, despite her contrary deposition testimony, Ms. Thomas failed to amend her petition.
In her deposition, Ms. Thomas did not testify that the carpet caused her to fall; rather, she testified that she “slipped off the plate.” The photographs Ms. Thomas presented give rise, at best, to an inference that the carpet around the plate was damaged. Moreover, Ms. Thomas’s testimony that “[t]he carpet could have prevented [her] ... from holding [her] ... foot in place because of the ravel” is speculative. Her argument in her brief to this court that “[t]his ‘raveled’ or ‘missing1 carpet caused a gap to the side of the plate of about an ‘inch’ due to the missing carpet and padding” is simply an allegation. “Such allegations [that the raveled or missing carpet caused an inch gap], inferences [that the photographs establish “damaged carpet”], and speculations [that the raveled or missing carpet could have prevented her fall] are not sufficient to create a genuine issue of material fact even if contained in an affidavit.” Smith v. Casino New Orleans Casino, 2012-0292, p. 11 (La.App. 4 Cir. 10/3/12), 101 So.3d 507, 514 (citing Sears v. Home Depot, USA, Inc., 06-0201, p. 12 (La.App. 4 Cir. 10/18/06), 943 So.2d 1219, 1228 (citing King v. Phelps Dunbar, L.L.P., 01-1735, p. 16 (La.App. 4 Cir. 4/2/03), 844 So.2d 1012, 1022); Adelmann-Chester. v. Kent, 08-0770 (La.App. 4 Cir. 6/5/09), 33 So.3d 187; see also Reed v. Home Depot USA Inc., 37,000 (La.App. 2 Cir. 4/9/03), 843 So.2d 588, 591 (noting that speculation as to|4the cause of an accident does not supply the factual support required to meet the plaintiffs evidentiary burden)).
Quoting the trial court’s statement at the close of the hearing that she was “not going to address that at all,” the majority states that the trial court failed to address Ms. Thomas’ claim under La. C.C. art. 2317.1. I disagree. The quoted statement was made by the trial court during the following colloquy that occurred at the close of the hearing:
MS. LEBLANC [DEFENDANT’S COUNSEL]: So what do you want the judgment to say, that you’re finding based on 9:2800.6?
THE COURT: That there is no question of material fact. The client using that statute as applicable under the facts of this case.
MS. LEBLANC [DEFENDANT’S COUNSEL]: Will you also render a judgment obviously in the same language that even under [La. C.C. art.] 2317[.l] she can’t meet her burden?
MR. MURA [PLAINTIFF’S COUNSEL]: Then you have to say it’s not a defect in the carpet.
*1285 THE COURT: No, she doesn’t have to say that because it’s not the carpet that made your lady fall.
MR. MURA [PLAINTIFF’S COUNSEL]: She says that the carpet caused her to lose her balance.
THE COURT: I’m not going to address that at all.
Taken in context, the trial court’s statement appears to be directed to the lack of any claim by Ms. Thomas that the carpet caused her to fall, not to the trial court’s refusal to consider her La. C.C. art. 2B17.1 claim.
Regardless of the legal theory on which Ms. Thomas relies — La. R.S. 9:2800.6 or La. C.C. art. 2317.1 — she was required to provide support for her claim that there was an unreasonable risk of harm or a defect that caused her to fall. Given her failure to provide any evidentiary support for her claim, I would affirm the trial court’s judgment granting Harrah’s motion for summary judgment.