| SAMUEL HERIBERTO HERNANDEZ & EZEQUIEL ALEJANDRO HERNANDEZ | * | NO. 2024-CA-0271 |
|---|---|---|
| | * | |
| | | COURT OF APPEAL |
| VERSUS | * | |
| | | FOURTH CIRCUIT |
| NORTHLAND INSURANCE COMPANY, NORTH AMERICAN TRANSPORT SERVICE, RAUL L. SANABRIA & MARTIN EULOGIO MEJIA | * | STATE OF LOUISIANA |
| | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-06352, DIVISION "D"
Honorable Monique E. Barial, Judge
* * * * * *
**Judge Karen K. Herman**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Karen K. Herman, Judge Nakisha Ervin-Knott)

Jason Giles
Brian King
John Love Norris, IV
THE KING LAW FIRM, LLC
2912 Canal Street
New Orleans, LA. 70119

      COUNSEL FOR PLAINTIFFS/APPELLANTS


Morgan J. Wells, Jr.
Evan J. Godofsky
Amanda G. Morse
LARZELERE PICOU WELLS SIMPSON LONERO, LLC
3850 North Causeway Boulevard
Suite 500
Metairie, LA. 70002

      COUNSEL FOR DEFENDANTS/APPELLEES

                        **AFFIRMED**
                        November 7, 2024

This appeal arises out of an automobile accident. Samuel Heriberto Hernandez and Ezequiel Alejandro Hernandez ("Hernandezes") and Martin Mejia ("Mr. Mejia") (collectively, "Plaintiffs") appeal the February 12, 2024 judgment granting a motion for summary judgment in favor of Defendants, Raul L. Sanabria ("Mr. Sanabria"), North American Transport Service, and Northland Insurance Company (collectively, "NATS Defendants"). For the reasons set forth below, we affirm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

On May 18, 2022, the Hernandezes were passengers in a vehicle operated by Mr. Mejia on Interstate 12 near the LA 434 entrance ramp in St. Tammany Parish. As it was merging onto the interstate, the Mejia vehicle was rear-ended by an 18-wheeler operated by Mr. Sanabria. At the time of the collision, the 18-wheeler was traveling in the far right lane of the two-lane interstate.

1

The Hernandezes filed a petition for damages alleging fault on the part of Mr. Mejia and the NATS Defendants.[1] Mr. Mejia filed a cross-claim against the NATS Defendants.[2]

The NATS Defendants filed a motion for summary judgment seeking dismissal of all causes of action asserted by the Plaintiffs, asserting that they would not be able to carry their burden of proof that Mr. Sanabria was negligent in causing caused the accident. In support of the motion, the NATS Defendants introduced: 1) the 18-wheeler's data recordings and the dash camera video; 2) the deposition testimony of the investigating officer, Trooper Jeffrey Heriot ("Trooper Heriot"), along with his accident report; 3) the affidavit of Mr. Sanabria; and 4) the affidavit of Silvana Sandri ("Ms. Sandri"), the Director of Safety for NATS.

In opposition to the motion for summary judgment, the Hernandezes introduced their own affidavits. Mr. Mejia adopted the opposition, introducing his affidavit. No other evidence was presented in opposition to the motion for summary judgment

The matter was brought for hearing on January 26, 2024. Initially, the NATS Defendants objected to the introduction of portions of the opposing affidavits, asserting that they were not based on personal knowledge and offered improper legal conclusions. The trial court ruled from the bench, accepting all affidavits submitted in support of and in opposition to the motion for summary judgment, striking any portions that contained conclusory opinions and speculative statements.

---

[1] Mr. Mejia was uninsured; the 18-wheeler was leased by North American Transport Service and insured by Northland Insurance Company.

[2] The NATS Defendants aver that the cross-claim was never served, and there is no evidence of service in this record. The record also reveals that Mr. Mejia was represented by counsel at the hearing on the motion for summary judgment.

Based on the evidence provided, particularly referencing the dash camera and data recording videos, the trial court orally granted the motion for summary judgment in favor of the NATS Defendants. Judgment was rendered on February 12, 2024, dismissing all claims asserted by the Plaintiffs against the NATS Defendants. This appeal followed.[3]

**LAW AND ANALYSIS**

On appeal, the Plaintiffs assert eight assignments of error, which we will address in three categories as follows:

I. The trial court erred in excluding portions of the Plaintiffs' affidavits.

II. The trial court erred in granting summary judgment by: 1) failing to properly evaluate the evidence; 2) misapplying the sudden emergency doctrine; 3) finding that the merging vehicle caused the accident without considering the evidence of the 18-wheelers' actions; and 4) failing to construe all factual inferences and doubt in favor of the Plaintiffs.

III. The trial court erred in awarding costs and attorneys' fees to the NATS Defendants.

***Summary Judgment Principles and Standard of Review***

The summary judgment procedure is favored and "designed to secure the just, speedy, and inexpensive determination of every action." La. C.C.P. art. 966(A)(2). The summary judgment procedure is designed to pierce the pleadings and to assess the evidence to determine if any genuine issue of material fact exists warranting a trial. *See Cutrone v. English Turn Prop. Owners Ass'n, Inc.*, 2019-0896, p. 7 (La. App. 4 Cir. 3/4/20), 293 So.3d 1209, 1214 (quoting *Bridgewater v.*

---

[3] Mr. Mejia adopted the Hernandezes' motion for devolutive appeal and their appellant brief.

*New Orleans Reg'l Transit Auth.*, 2015-0922, p. 4 (La. App. 4 Cir. 3/9/16), 190 So.3d 408, 411).

Pursuant to La. C.C.P. art. 966(D)(1),

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

La. C.C.P. art. 967(B) further provides:

> When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.

Appellate courts review the grant or denial of a summary judgment motion *de novo* using the identical criteria that trial courts use to determine whether summary judgment is proper. *See Planchard v. New Hotel Monteleone, LLC*, 2021-00347, p. 2 (La. 12/10/21), 332 So.3d 623, 625 (citations omitted). "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). "In determining whether an issue is genuine, courts cannot consider the merits, make credibility determinations, evaluate testimony, or weigh evidence." *Tran v. Collins*, 2020-0246, p. 3 (La. App. 4 Cir. 8/20/21),

4

326 So.3d 1274, 1278 (quoting *Lewis v. Jazz Casino Co.*, 2017-0935, p. 6 (La. App. 4 Cir. 4/26/18), 245 So.3d 68, 72).

We now review the evidence presented in connection with the motion for summary judgment.

Trooper Heriot testified in his deposition that he had a personal recollection of the accident. He also referred to the accident report made in connection with his investigation. Trooper Heriot noted that Mr. Mejia and his passengers fled on foot, but were apprehended and returned to the scene by the Sheriff's department. Mr. Mejia was cited for hit-and-run, improper lane use, no driver's license and no insurance. Cutting-in and improper passing were also listed as violations.

Trooper Heriot stated that, as standard procedure, he viewed the 18-wheeler's dash camera video on the scene; it revealed the following: 1) the Mejia vehicle entered the interstate from LA 434 and switched lanes into the path of the 18-wheeler; 2) there was no vehicle or debris ahead of the Mejia vehicle in the entrance/acceleration lane when it entered the interstate; 3) there was additional length of lane for the Mejia vehicle to continue in the entrance/acceleration lane without impeding the traffic on the interstate; 4) as it merged onto the interstate, the Mejia vehicle's brake lights illuminated; and 5) the impact occurred within two seconds of the Mejia vehicle merging onto the interstate.

Based on his review of the video, Trooper Heriot estimated Mr. Mejia's speed at 45 mph, and the 18-wheeler at 70 mph. He also stated that Mr. Sanabria could not have switched lanes to get out of the way because another vehicle (operated by Nathan Hotard) was immediately to his left.[4] Trooper Heriot

_____

[4] After the collision with the 18-wheeler, the Mejia vehicle struck the Hotard vehicle.

5

concluded that Mr. Sanabria could not have stopped in time. Finally, Trooper Heriot confirmed that pursuant to La. R.S. 32:71, Louisiana law mandates that all vehicles, including the 18-wheeler, travel in the right lane of the interstate unless passing another vehicle.[5]

Mr. Sanabria stated in his affidavit that: 1) he was traveling in the right lane of Interstate 12 when the Mejia vehicle suddenly moved from the entrance/acceleration lane directly in front of his vehicle, and appeared to apply its brakes; 2) he applied his brakes but was unable to avoid striking the rear of the Mejia vehicle; 3) he was unable to move to the left because there was another vehicle in the left lane; 4) after the impact, the Mejia vehicle came to rest in the median and the three occupants exited the vehicle and fled the scene; and 5) the 18-wheeler was equipped with a dash camera video, which accurately depicted the accident scene. Regarding the dash camera video, Mr. Sanabria stated that it shows: 1) the Mejia vehicle traveling in the entrance/acceleration lane at a rate of speed slower than the 18-weeler; 2) the Mejia vehicle merging to the left, directly in front of the 18-wheeler, and the brake lights illuminate; 3) the impact occurred within two seconds of the Mejia vehicle moving in front of the 18-wheeler; and 4) when the Mejia vehicle merged to the left, the entrance/acceleration lane was still open for at least one hundred feet, and free of any obstacles.

---

[5] La. R.S. 32:71B.(1)(a) provides:

> Upon all multilane highways, no vehicle shall be driven in the left-hand lane except when directed otherwise, preparing for a left turn at an intersection or private road or driveway, overtaking or passing another vehicle proceeding in the same direction, or when right-hand lanes are congested; however, no vehicle being driven in the left lane except when directed otherwise or preparing for a left turn at an intersection, private road, or driveway shall impede any other vehicle that is traveling in the same lane and behind that vehicle.

Ms. Sandri stated as follows in her affidavit: 1) the dash cameras on the 18-wheeler are equipped with data recordings, which include a record of the vehicle's speed simultaneously with the video; 2) Exhibit 1 (attached to her affidavit) is the original, unedited download of the dash camera video depicting the incident as well as the data recording showing the driver's speed at the time of impact; and 3) Exhibit 2 (also attached) is the original, unedited download of the dash camera video depicting the driver's viewpoint. Ms. Sandri authenticated the videos.

The Hernandezes attested in their affidavits that: 1) prior to merging, Mr. Mejia activated his left turn signal; 2) Mr. Mejia gave advanced warning of his intent to merge; 3) they observed two disabled vehicles on the shoulder of the road in the vicinity; 4) as they merged into the right lane of the interstate, they were struck from the rear by the 18-wheeler; 5) the collision was unexpected and unavoidable; and 6) Mr. Sanabria never slowed down or applied his brakes prior to the collision.

Mr. Mejia stated in his affidavit that: 1) as he merged onto the interstate, he maintained a safe and appropriate speed for the road conditions; 2) he initiated his turn signal; 3) the collision was unavoidable as the driver of the merging vehicle; and 4) he maintained a safe and defensive driving technique of avoiding the disabled vehicles on the shoulder of the road.

### *Evidentiary Ruling on the Affidavits*

Prior to the ruling on the motion for summary judgment, the NATS Defendants objected to what they considered to be the Hernandezes' unsupported speculative statements in the affidavits, particularly that Mr. Sanabria never slowed down or applied his brakes prior to the collision. They submitted that the statement

is not based on personal knowledge, as the Hernandezes could not have observed whether or not Mr. Sanabria applied his brakes.

The NATS Defendants also objected to Mr. Mejia's statements that he safely merged into the right lane maintaining a "legal and safe speed" when he was unexpectedly struck from the rear. The NATS Defendants objected to this statement as a legal conclusion, urging the court to consider the video recordings that showed Mr. Mejia driving significantly below the speed limit for interstate traffic.

Following oral argument on the issue, the trial court held that it would not consider any "conclusory opinions and speculative statements" contained in the affidavits submitted by the parties. We find no error in that ruling.

As this Court explained in *Jones v. Boot Bar & Grill*, 2022-0154, p. 17 (La. App. 4 Cir. 10/5/22), 350 So.3d 968, 981,

> Louisiana Code of Civil Procedure Article 967(A) states, in pertinent part, that "[s]upporting and opposing affidavits [in connection with a motion for summary judgment] shall be made on personal knowledge" and "shall set forth such facts as would be admissible in evidence ...." This Court has defined "personal knowledge" for the purpose of a supporting affidavit as "something which a witness actually saw or heard, as distinguished from something a witness learned from some other person or source." *Harris v. Boh Bros. Constr. Co.*, 2020-0248, p. 8 (La. App. 4 Cir. 5/26/21), 322 So.3d 397, 405 (quoting *Capital One Bank (USA), NA v. Sanches*, 2013-0003, p. 6 (La. App. 4 Cir. 6/12/13), 119 So.3d 870, 873-74). It "encompasses only those facts which the affiant saw, heard or perceived with his [or her] own senses." *Id*.

Here, the trial court accepted statements in the affidavits as to what was personally observed, specifically disregarding the statements that Mr. Sanabria never slowed down or applied his brakes prior to the collision. As the trial court noted, the Hernandezes had no personal knowledge of that fact, as they were in front of the 18-wheeler at the time of the collision. The court also specifically

8

struck Mr. Mejia's statement that his vehicle was legally and safely operated, considering that to be a proposition for the Court to address.

Based on the well-established principles reiterated above, we find no error in the trial court's ruling, striking those portions of the affidavits submitted by the parties that were inadmissible pursuant to La. C.C.P. art. 967. We now consider whether summary judgment was properly granted.

### Summary Judgment Rendered in favor of the NATS Defendants

The Plaintiffs assert that the trial court failed to properly evaluate the evidence and misapplied the sudden emergency doctrine. More specifically, they argue that the sudden emergency doctrine should not have been used to shield Mr. Sanabria from liability when the evidence clearly showed that he could have avoided the accident by exercising proper caution.

The sudden emergency doctrine provides that "a driver without sufficient time to weigh all the circumstances and whose actions did not contribute to the emergency cannot be assessed with negligence...." *Causey v. New Orleans Reg'l Transit Auth.*, 2018-0983, p. 4 (La. App. 4 Cir. 3/20/19), 267 So.3d 187, 190 (quoting *Coffey v. Mushatt*, 2003-0232, p. 4 (La. App. 4 Cir. 10/1/03), 859 So.2d 727, 730). The jurisprudence also recognizes that "the sudden emergency does not apply to situations in which the party asserting the doctrine was also negligent." *Waters v. Oliver*, 2016-1262, p. 11 (La. App. 4 Cir. 6/22/17), 223 So.3d 37, 46 (citing *State Farm Mut. Auto. Ins. Co. v. LeRouge*, 2007-0918, p. 18 (La. App. 4 Cir. 11/12/08), 995 So.2d 1262, 1275).

The Plaintiffs maintain that Mr. Sanabria had sufficient time and space to react to Mr. Mejia's lane change, but failed to do so. However, they presented no evidence, other than the unsubstantiated statements made in their affidavits, to

9

show negligence on the part of Mr. Sanabria. As stated above, the trial court ruled that the conclusory opinions and speculative statements contained in the affidavits would be disregarded.

Based on our *de novo* review of the record, we find that the sudden emergency doctrine was properly applied. The videos clearly demonstrate that Mr. Sanabria was traveling in the right lane of the interstate, at a proper rate of speed, when Mr. Mejia suddenly merged directly in front of him, and almost immediately applied his brakes. Although Mr. Sanabria applied his brakes, the collision occurred within two seconds, demonstrating that Mr. Sanabria had no time to react. It is also evident that Mr. Sanabria could not have changed lanes in order to avoid the collision due to the Hotard vehicle traveling immediately to his left.

The Plaintiffs further argued that material factual disputes and conflicting versions of the accident still exist. We disagree.

To reiterate, the video evidence clearly establishes Mr. Mejia's negligence in merging, at a slow rate of speed, directly in front of the 18-wheeler, then braking. It also demonstrates that Mr. Sanabria was traveling in the right lane in accordance with La. R.S. 32:71, at approximately 68 mph, which is just below the posted speed limit of 70 mph. Finally, the video reflects Mr. Sanabria's proper reaction under the circumstances (applying his brakes and reducing his speed to approximately 65 mph) in attempting to avoid the collision. Thus, we find that the NATS Defendants, as the parties moving for summary judgment, satisfied their initial burden of proving that there is no genuine issue of material fact remaining here.

Conversely, the Plaintiffs, presented nothing to contradict the evidence submitted by the NATS Defendants. Discounting the conclusory and self-serving

10

statements that Mr. Sanabria never applied his brakes or slowed down, the Plaintiffs presented no evidence of negligence on the part of Mr. Sanabria. It is well-established that …"[m]ere conclusory allegations, improbable inferences and unsupported speculation will not support a finding of a genuine issue of material fact." *Moon v. Safeway Ins. Co. of Louisiana*, 2022-0455, p. 15 (La. App. 4 Cir. 12/6/22), 353 So.3d 352, 362 (quoting *Sears v. Home Depot, USA, Inc*., 2006-0201, p. 12 (La. App. 4 Cir. 10/18/06), 943 So.2d 1219, 1228).

Here, because the Plaintiffs failed to provide any factual evidence of Mr. Sanabria's negligence sufficient to establish that they will be able to meet their burden of proof at trial, summary judgment was properly granted. Moreover, based on the record before us, we do not find, as the Plaintiffs assert, that the trial court impermissibly weighed the evidence or made an improper credibility determination.

### *The Award of Costs and Attorneys' Fees*

Finally, the Plaintiffs argue that the trial court erred in awarding costs and attorneys' fees to the NATS Defendants. However, the record reflects that attorneys' fees were not awarded.[6] Rather, the judgment provides that the NATS Defendants were awarded $330.00 in costs incurred in connection with the filing and serving of their motion for summary judgment.

"As a general rule, the party cast by the judgment bears all costs, including its own and those of the prevailing party." *Certain St. Bernard Parish Gov't Computer Disks v. St. Bernard Parish Gov't ex rel. Ponstein*, 2013-1054, p. 8 (La. App. 4 Cir. 12/18/13), 130 So.3d 56, 61 (citing *Clarkston v. Louisiana Farm*

---

[6] The transcript reflects that at the conclusion of the hearing, the trial court instructed the NATS Defendants to submit an affidavit for attorneys' fees. However, the NATS Defendants contend they did not pursue an award for attorneys' fees.

*Bureau Cas. Ins. Co.*, 2007-0158, p. 40 (La. App. 4 Cir. 7/2/08), 989 So.2d 164, 191). Moreover, La. C.C.P. art. 1920 provides that "the court may render judgment for costs or any part thereof, against any party, as it may consider equitable."

As the NATS Defendants prevailed on summary judgment, we find no error or abuse of discretion in the trial court's assessment of costs incurred in filing the motion.

## DECREE

For the foregoing reasons, we find no error in the trial court's February 12, 2024 judgment granting summary judgment in favor of the NATS Defendants and in awarding costs.

**AFFIRMED**